# CHARLES PERRY v. STATE.

No. A-10672.   May 14, 1947.

(181 P. 2d 280.)

Hal Whitten, of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Charles Perry, and Bertha Clifford were jointly charged upon complaint of Franklin Hiram Clifford, husband of Bertha Clifford, with the crime of adultery in a complaint filed before a justice of peace of Oklahoma county. Subsequent to the preliminary examination, an information was filed in the district court of Oklahoma county charging them with said crime of adultery. Thereafter, the county attorney filed a motion to dismiss the action against both of the defendants but upon objection of the husband, Franklin Hiram Clifford, the action was continued as to the defendant, Charles Perry, and dismissed as to Clifford's wife, Bertha. The defendant, Perry, was tried to a jury, convicted, with the sentence left to the court. Perry was thereupon sentenced to serve two years in the State Penitentiary, and has appealed.

Counsel for defendant have presented many assignments of error. Most of them have substantial merit, but in the view which we have taken of the case it is not necessary to discuss all of them.

Franklin Hiram Clifford and Bertha Clifford were married in 1926. Two boys and two girls were born to that marriage and were living at the time this prosecution was instituted. The defendant, Charles Perry, age 48, was a veteran of both World Wars. After being honorably dis-

charged from the Army, he commenced work for an ordnance company in March, 1944. Franklin Clifford enlisted in the Army on October 14, 1943.

Subsequent to the enlistment of Franklin Hiram Clifford in the Army, his wife commenced working at the same ordnance plant where the defendant was employed. In April, 1944, the defendant and Mrs. Clifford became acquainted; later they were seen together on different occasions. On December 29, 1944, Franklin Clifford was discharged from the United States Army as a psychopathic case. He returned to live with his family, but later trouble developed between him and Mrs. Clifford, and in January, 1945, Mrs. Clifford made arrangements with her husband to go to Arizona. Mrs. Clifford got in touch with the defendant, Perry, and he came on the train with Mrs. Clifford and her two daughters to Oklahoma. They commenced living together at a farmhouse near Choctaw in Oklahoma county, shortly after they came to Oklahoma. They were known in the neighborhood as Mr. and Mrs. Perry and the two girls enrolled in school under the name of Perry.

On February 5, 1945, Franklin Clifford, who had followed his wife, located her and the defendant at their home near Choctaw. He went to the house shortly after dark, walked in and shot the defendant twice. One of the bullets from the pistol entered his right temple and came out through his left jaw, causing a paralysis to the defendant's right arm and right leg which had continued up to the date of the trial of the case out of which this appeal was taken. He was also shot in the stomach. The defendant, Perry, was taken to the Oklahoma City General Hospital where he remained about four weeks. Clifford was incarcerated in the county jail and a charge of assault with

intent to kill was filed against him. The preliminary hearing was postponed pending the outcome of the injuries sustained by Perry. When Perry had recovered sufficiently to be able to leave the hospital, the case against Clifford was set for a preliminary hearing. Both the state and the defendant issued subpoenas for Perry and he appeared at the preliminary hearing under the compulsion of the subpoenas which were served on him. Counsel who were employed to represent Clifford placed Perry upon the witness stand purportedly to testify as a witness in behalf of Clifford. He was asked if he had ever had sexual intercourse with Mrs. Clifford and Perry stated that he had on two different occasions. Based upon this statement of Perry, Clifford and his counsel made a demand on the county attorney that adultery charges be filed against Perry and Mrs. Clifford.

Subsequently the assault with intent to kill charge was dismissed against Clifford. Thereafter, the county attorney filed a motion to dismiss the adultery charge against the defendant, which motion reads as follows:

"Comes now Warren H. Edwards, the duly elected, qualified and acting County Attorney of Oklahoma County, State of Oklahoma, and moves the court to dismiss the above entitled cause for the following reasons, to-wit:

"The County Attorney is of the opinion that the facts in this case are not sufficient upon which to base a conviction and that the evidence is not sufficient to prove the defendants guilty beyond a reasonable doubt; that this action was instituted by Franklin Hiram Clifford, the aggrieved husband, and the available evidence points to the fact that the said Clifford is not of mentally sound mind; that at the preliminary hearing the two minor daughters of the complaining witness testified to facts tending to disprove the act of adultery, and that later one of these witnesses testified under oath to the contrary and

admitted that her testimony at the preliminary hearing was false. To a large extent proof of the guilt will depend on the veracity of these minor children and we do not think their evidence is dependable. Further investigation shows that the complaining witness Clifford and his wife have become reconciled and are now living together or planning so to do, and that the wife of the complaining witness, Bertha Clifford, will not testify against the defendant to actual adultery; that the only definite proof of adultery was given by the defendants, Charles Perry and Bertha Clifford, at the preliminary trial of Franklin Hiram Clifford wherein Clifford was charged with the crime of assault with a dangerous weapon and that said witnesses were by the said Clifford's attorney and by the Magistrate compelled to testify about acts of adultery and in violation of their constitutional rights without having been warned that they could refuse to give testimony incriminating themselves and without being represented by counsel, and that by reason thereof their admissions cannot be used against them and in all probability render them immune from prosecution upon said charge."

Counsel who represented Clifford at his preliminary hearing on the assault charge was hired as a special prosecutor by Clifford in the adultery case. After the state, acting through the county attorney, had filed the written motion to dismiss, special counsel for Clifford on Clifford's behalf objected to the cause being dismissed as to the defendant, Perry; but stated that Clifford and his wife had become reconciled, had started living together again, and agreed that the case could be dismissed as to Mrs. Clifford. When the motion to dismiss was presented to the trial court, the action was dismissed as to Mrs. Clifford but ordered continued against the defendant, Perry. The trial court stated that in view of the statute (21 O. S. 1941 § 871) under which this action was brought, the right of the county attorney to determine whether the action should be dismissed was placed in the husband or wife as the case

may be, who caused the prosecution to be instituted, and that the action could not be dismissed without the consent of Franklin Clifford. The court further stated that but for the provision of the special statute under which the prosecution was instituted, he would have dismissed the action in accordance with the motion filed by the county attorney. Thereafter, the defendant filed a motion to abate and dismiss in which several grounds were alleged, among them being the following:

"The charge complained of has been condoned by Franklin Hiram Clifford, husband of Bertha Clifford, with whom the defendant is charged with having committed adultery."

"The charge and action has been dismissed by order of the district court, herein."

"The court has received motion by the County Attorney to dismiss the action and said action should be dismissed by reason of the condonation of the prosecuting witness, Franklin Hiram Clifford, of the act complained of, and for the further reason that prosecution of all crimes is within the control of the County Attorney, and when the County Attorney signifies that the action be dismissed by his motion, the court has the power to do so."

"The defendant, Charles Perry, has been placed immune from further prosecution by reason of having been subpoenaed and forced to involuntarily testify in the case of State of Oklahoma v. Franklin Hiram Clifford, said defendant, Perry, having given his testimony under court subpoena in the preliminary hearing before the Justice of the Peace, Wayland McCarty, involving him in alleged acts charged herein, and that he, the said Charles Perry, being required under law to so testify in the case of State v. Clifford, immunity is granted under Artcile 2, Section 27, of the Oklahoma Constitution. That in support of this motion and plea, the defendant respectfully adopts as though attached hereto the pleadings in the above styled

action and in Case No. 17045, State of Oklahoma v. Clifford, as though fully set out herein."

"Wherefore, defendant respectfully prays that an order of abatement be issued, this case dismissed, and that he be discharged."

When this motion to abate and dismiss came on for hearing, counsel for defendant introduced in evidence the order signed by the district judge on March 10, 1945, dismissing the action, which order reads:

"Now on this 10th day of March, 1945, the above entitled cause, coming on to be heard upon motion to dismiss said cause, and the court being fully advised in the premises, finds that said motion should be sustained, *as to Bertha Clifford, only,* and it is therefore ordered, adjudged and decreed that said cause be, and the same is hereby dismissed for the reasons as set forth in said motion." (The words italicized were written in pencil, the rest of the order is a printed form—Reporter.)

The record discloses that at the time the order was signed by the district judge and filed with the Clerk, it constituted the dismissal of the action completely with no words limiting it to Mrs. Clifford. The record further shows that the special prosecutor stated that the assistant county attorney called his attention to the fact that the dismissal applied to the complete action without limiting it to just one of the defendants. He, the special prosecutor, took a pencil and inserted in the court's order "as to Bertha Clifford, only". As to what then transpired is reflected by the record as follows:

"Mr. Miskovsky: That is the order of the court, and I amended it to speak the truth. The Court: It will be amended if it is incorrectly drawn, the court at this time will enter an order nunc pro tunc because it wasn't intended to dismiss the case as to anybody except Bertha Clifford. That is the only way it was presented to the

court and that is the way it was supposed to be done. Mr. Whitten: It is our position when the case was dismissed it cannot be re-newed through the mere changing of the record by the special prosecutor without the order of the court. The Court: The only thing the court sees material on that is what the court did, and what somebody else put in the order doesn't have anything to do with it."

The court thereupon denied the motion to abate and dismiss filed on behalf of defendant, Perry, and his action in this regard is assigned as error. The statute under which this action was instituted provides:

"Adultery is the unlawful voluntary sexual intercourse of a married person with one of the opposite sex; and when the crime is between persons, only one of whom is married, both are guilty of adultery. Prosecution for adultery can be commenced and carried on against either of the parties to the crime only by his or her own husband or wife as the case may be, or by the husband or wife of the other party to the crime: Provided, that any person may make complaint when persons are living together in open and notorious adultery." 21 O. S. 1941 § 871.

Under the provisions of this statute, it has been held that an action cannot be prosecuted for adultery that is not open and notorious, except on complaint of the injured spouse. Stone v. State, 12 Okla. Cr. 313, 155 P. 701; Heacock v. State, 4 Okla. Cr. 606, 112 P. 949; Copeland v. State, 10 Okla. Cr. 1, 133 P. 258; Hagan v. State, 73 Okla. Cr. 328, 121 P. 2d 315.

The general rule is stated in 2 C. J. S., Adultery, 12, p. 480, as follows:

"Although there is authority to the contrary it is generally held that, where the prosecution is commenced on the complaint of the husband or wife, the general criminal procedure of the court is invoked and complete, and the husband or wife has no further control of the prosecution."

In Oklahoma, the general rule above stated has been modified so that the prosecution could not be continued after it had once been filed, if the injured spouse chose to not carry on the prosecution. Lee et al. v. State, 28 Okla. Cr. 397, 231 P. 324; Taylor v. State, 29 Okla. Cr. 160, 232 P. 963.

In Taylor v. State, supra, the law is stated:

"In a prosecution for adultery, the fact that the injured spouse, who instituted the prosecution, subsequently relents and refuses to carry on the prosecution requires a dismissal of the case."

While our statute provides that the state may not prosecute a person for the crime of adultery that is not open and notorious except that it be commenced and carried on by the injured spouse, yet it does not mean that the injured spouse will supersede the county attorney in the action and that the state no longer has any control over the proceeding. The statute and the decisions of this court above quoted interpreting the same prevents a prosecution from being carried on without the consent of the injured spouse, but it does not mean that the injured spouse can insist on a prosecution and force the county attorney, who is the representative of the state, to prosecute an action where he is of the opinion after a study of the facts and an investigation that in his opinion the facts are not sufficient to justify the institution of an action.

By statute, it is provided that no complaint charging a person with any criminal offense may be filed without the endorsement of the county attorney. 22 O. S. 1941 § 258.

In McGarrah v. State, 10 Okla. Cr. 21, 133 P. 260, 262, this court in discussing the power and duties of a county attorney stated:

"We know of no rule of law whereby a public officer may delegate power or authority involving official discretion or responsibility, except as prescribed by the statute. The law has very carefully guarded the administration of public justice from any interested or unauthorized intermeddling. The county attorney is a very responsible officer, selected by the people and vested with a wide personal discretion, intrusted to him as a minister of justice. There are many reasons why a power of this kind should be confined to the prosecuting officer. He is expected to be impartial in abstaining from prosecuting, as well as in prosecuting, and to guard the real interests of public justice in favor of all concerned.

"It is therefore of the highest importance to the public that this power should be carefully exercised, and that the responsibility should rest upon the officer to whom it is confided.

"By section 1557, supra, a county attorney is disqualified from becoming in any way entangled with private interests, or grievances connected with the private practice of law. The office of county attorney is quasi judicial, and the county attorney and his legally appointed assistant must be exclusively the respresentative of public justice, and stand indifferent as between the defendant and any private interest.

"The public have a right to insist upon the performance of public duties that are strictly official in the prosecution of crime by county attorneys and assistants duly appointed and qualified as provided by law, and we think it would be directly contrary to public policy to allow or permit any general delegation of the county attorney's power or responsibility in this respect."

In State v. Snelson et al., 13 Okla. Cr. 88, 162 P. 444, the syllabus reads:

"The statutes of Oklahoma make it the duty of county attorneys to guard the interests of the state and public,

and specifically confer authority upon them to commence criminal actions on behalf of the state.

"Held, that the provisions of section 8099, Rev. Laws 1910 [74 O. S. 1941 § 179], making it the duty of the commissioner of charities and corrections to prosecute certain offenders, does not confer additional authority upon the Commissioner of Charities and Corrections, but only imposes a duty upon him, to prosecute such offenders through the regular channels existing for the prosecution of criminal offenses."

In the body of the opinion, this court in construing a provision of the statute authorizing the Commissioner of Charities and Corrections to prosecute such actions stated:

"All this section does is to impose upon the Commission of Charities and Corrections the duty to prosecute the classes of offenders specified through the regular channels existing for the prosecution of offenders."

A "prosecutor" is defined as:

" ' * * * One who instigates a prosecution, by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based.' [34 Words and Phrases, Perm. Ed., p. 632]; Eady v. State, 10 Ga. App. 818, 74 S. E. 303."

"And section 8099, Rev. Laws 1910, we think, does not even attempt to confer additional authority upon the Commissioner of Charities and Corrections, but only imposes a duty upon him, which is to be performed through the regular and existing channels for the prosecution of offenders."

"Before the Commissioner of Charities and Correction could legally indorse complaints and informations, and institute criminal actions on behalf of the state, that authority would have to be specifically conferred by stat-

ute; and, until that is done, he only has a duty imposed by statute to be performed in the same way as other 'prosecutors'; and, as other 'prosecutors' must submit to the judgment of the county attorneys of the state as to whether or not the parties complained of are offenders against the penal statutes of the state."

We think the trial court in the instant case was under a mistaken impression of the law of the case when he held that he could not dismiss the action as to the defendant, Perry, on the motion of the county attorney, over the objection of Clifford. To hold that the injured spouse should have the absolute control of the criminal action which is instituted and to be able to determine absolutely whether it should be dismissed or carried on, would be to open the door of a treasure room for a hoard of blackmailers. We have already put it in the power of the complaining witness to control the question as to whether the prosecution could be carried on, but we will not equip them with a new weapon by saying that they can force the prosecution to be continued even though the state through its legal representative is of the opinion that the action should be dismissed. In no other class of litigation is the opportunity for blackmail already so great, and to increase it by putting into the power of the complaining witness, not only the institution, but the entire destiny of the prosecution, is to close our eyes to a grievous situation and add to its immense possibilities for those who are evilly disposed.

A criminal action may not be dismissed except on order of the court, the county attorney not being vested with such authority. 22 O. S. 1941 § 815. However, under the provision of this statute the county attorney may move that the action be dismissed, and since he is the legal representative of the state charged with the responsibility of

investigating and prosecuting all public offenses, the trial judge will ordinarily accept his recommendation and dismiss the action.

In Adams v. State, 21 Okla. Cr. 448, 209 P. 189, 191, it is held:

" 'The court may, either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes.' Rev. Laws 1910, § 6099. This is a judicial function, made so by statute, that cannot be delegated to the county attorney."

In Kerker v. Superior Court, 38 Okla. Cr. 111, 259 P. 146, this court held that a dismissal cannot be made by the county attorney, but must be made by order of the court.

We next come to a consideration of the order which was made by the court at the time the motion to dismiss was presented to him. Apparently it was the intention of the court to dismiss the action as to the wife of Franklin Clifford, only. The order as signed by the court contained no such limitation but constituted an effective dismissal of the case. When the Special Prosecutor subsequent to the filing of the court's order of dismissal noticed that it was effective as to both of the defendants, and he was of the opinion that such order was not in accordance with the intention of the court, he should have taken it to the trial court for correction by the court. His insertion with a pencil notation of the words "as to Bertha Clifford, only" was improper, unauthorized, and deserving of a reprimand.

It is contended that the admission of the record of the testimony of Perry at the preliminary hearing on the assault with the intent to kill charge filed against Cliifford was error.

When the transcript of the record identified by the reporter was offered in evidence, counsel for defendant objected to its competency on the ground that it was obtained by compulsion and that its admission was contrary to the constitutional rights of the defendant. When this objection was interposed, a hearing was had in the absence of the jury. The defendant testified that he was subpoenaed by the state to appear as a witness to testify against Clifford. That he would not have appeared at the hearing except under compulsion by reason of the subpoena being served upon him. That at the time he appeared as a witness, his wounds were still bandaged and he was under the influence of a sedative given him by a physician to alleviate his suffering. That he did not have counsel to represent him at the time he appeared as a witness and did not know that he had a constitutional right to refuse to answer any questions that might incriminate him. The objection to the admission of this evidence was overruled and the transcript of his evidence given at the preliminary hearing of Franklin Clifford was read to the jury. The proof showed that after the state had rested its case in the preliminary hearing against Clifford on the assault charge, Clifford's counsel had Perry, who had not been used by the state as a witness, sworn and asked him the questions, the answers to which incriminated Perry of the crime of adultery committed with Mrs. Clifford. Perry testified that he was a man with only a fourth grade education and had never been in a courthouse before. He knew nothing of his constitutional rights but thought when he was subpoenaed to appear as a witness that he was forced

to appear and answer any questions that might be asked him truthfully, even though such questions were of an incriminating nature. He was outside of the courtroom when his name was called as a witness and he stated he did not know when he took the witness stand who was even placing him on the stand or for which side he was testifying.

We are confronted here with an unusual situation, the parties suffering a complete reversal of positions. Clifford was the defendant and taking advantage of his rights as defendant, he employed counsel and procured a statement from a witness under compulsion and then clothed with special power given him by statute forced the county attorney to commence a prosecution against the witness who had testified for him and switched his position from defendant to that of prosecutor with the principal source of proof against the man whom he was prosecuting being the confession secured by reason of evidence given in defense of the person that is now prosecuting him.

The Oklahoma Constitution provides that "no person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided * * *." Art 2, § 21, Okla. Const.

Art. 2, Sec. 27, provides:

"Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with an offense against the laws of the state, shall not be excused from giving testimony or producing evidence, when legally called upon to do so, on the ground that it may tend to incriminate him under the laws of the state; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence."

In construing the above two sections of the Constitution, this court stated in the case of Ex parte Gudenoge, 2 Okla. Cr. 110, 100 P. 39:

"Section 27 of the Bill of Rights (Bunn's Ed. § 36) removes the protection of the constitutional privilege as set forth by section 21 of the Bill of Rights (Bunn's Ed. § 30), and said section 27 must be construed as declaring that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence or in any manner used against him or his property or estate, in any court of the state, in any criminal proceeding, or for the enforcement of any penalty or forfeiture."

"The manifest purpose of the constitutional provisions, both of the United States and of this state, is to prohibit the compelling of testimony of a self-criminating kind from a party or witness."

"No statute, which leaves a party or witness subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution. To be valid the statute must afford absolute immunity against future prosecution for the offense to which the question relates."

In Scribner v. State, 9 Okla. Cr. 465, 132 P. 933, 939, Ann. Cas. 1915B, 381, it is held that sections 21 and 27, supra, are inseparably connected with each other, relate to the same subject matter and must therefore be construed together as though constituting but one section. The law of that case as stated in the syllabus provides:

"Section 21 of the Bill of Rights of the Constitution, which, among other things, provides that 'no person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided,' simply protects each person in the right of silence. It does not mean that he shall not be allowed or permitted to give testimony which may tend to incriminate him. The right of silence is one which may be waived, either by

contract or by the voluntary act of the witness, and is waived if the right is not asserted in apt time."

In the body of the opinion it is stated:

"There being no case directly in point, we are forced to rely on the evident meaning of the immunity of our Constitution, and upon general principles in deciding the question now before us. The language of our Constitution is broad and comprehensive, and covers all persons, whether natural or artificial, and is applicable to all criminal prosecutions without limitation. In other words, the immunity clause is just as broad and no broader than the right or privilege of silence which it invades, and which is contained in section 21 of the Bill of Rights of our Constitution. If there had been no right of silence, there would be no necessity for granting immunity. The two rights preserved in our Constitution are in all respects equal and cannot be logically divorced or distinguished from each other. The object of granting immunity evidently was to assist the state in procuring credible evidence which otherwise could not be secured, and thereby enforcing the law. Its purpose is to suppress crime and to protect society, and it would be a gross perversion of this purpose to so construe this provision as to make it the means of protecting crime and defeating the enforcement of justice.* * *

"This court is unequivocally of the opinion that criminal laws are enacted and courts are established solely and exclusively for the purpose of suppressing crime, and thereby protecting society, and it is from this viewpoint that we construe all statutes and constitutional provisions. We are therefore of the opinion that before any witness is entitled to immunity under the provisions of our Constitution on account of self-incriminatory testimony which he may have given, such person must comply fully with the spirit of all of the provisions which the Constitution contains on this subject. The privilege of silence is one which may be waived, and which is waived if objection is not made in apt time. If a witness answers questions in such a manner as to incriminate himself he should not be grant-

ed immunity unless, in the language of the Constitution, he has been 'compelled to give evidence' which incriminates him and has 'so testified.' But it may be suggested that a witness may testify without having knowledge of his legal rights in the premises. As a matter of first impression, and viewing this question alone from the standpoint of an individual defendant, it does appear to be unjust to hold that a defendant can waive a right of which he has no knowledge, and that common fairness would require that before a defendant could waive this right he should be informed by the officers of its existence. A little reflection, however, will show that this is an exceedingly narrow and superficial view which is inconsistent with the principles of the law and contrary to the highest considerations of public policy. It would be exceedingly unjust to the state and to society, for whose protection laws are enacted and courts are established, to hold that the action of the county attorney or a member of the grand jury, in inadvertently asking an improper question or, through ignorance or otherwise, neglecting to advise a witness of his rights, should operate as an acquittal of one guilty of crime, when as a matter of law and fact an acquittal of crime cannot be rendered except in a court of competent jurisdiction, after the evidence has all been heard and the jury have had the legal questions involved submitted to them by the judge."

In Tague v. State, 15 Okla. Cr. 55, 174 P. 1106, it is held:

"Before any person can secure immunity under section 27 of the Bill of Rights of our Constitution, on account of incriminatory evidence given by him before any court of competent jurisdiction, such witness must have claimed his privilege of silence, and be denied that privilege by the court, and forced to testify over his objections, and must also in good faith disclose all the facts pertaining in the matter inquired about truthfully."

See, also, Eden v. State, 54 Okla. Cr. 265, 21 P. 2d 775; Rudolph v. State, 32 Okla. Cr. 265, 240 P. 761; Hunter v. State, 63 Okla. Cr. 24, 72 P. 2d 399.

The answer made by the defendant in response to the questions of Clifford's attorney at the preliminary examination of Clifford constituted a confession of the defendant Perry's guilt of the crime of adultery.

In Smith v. State, 77 Okla. Cr. 142, 140 P. 2d 237, it is stated:

"Confessions are either voluntary or involuntary. If voluntary, they may be admitted in evidence. If involuntary, they are inadmissible.

"A voluntary confession is one made by an accused freely and voluntarily, without duress, fear or compulsion in its inducement, and with full knowledge of the nature and consequences of the confession." To the same effect, see Lyons v. State, 77 Okla. Cr. 197, 138 P. 2d 142, 140 P. 2d 248; Id., 322 U. S. 596, 64 S. Ct. 1208, 88 L. Ed. 1481.

We are of the opinion that the constitutional right of the defendant to immunity on account of incriminatory evidence given by him before a court is a privilege that may be waived in accordance with the decisions hereinabove quoted.

In Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, Ex parte Bradley, 72 Okla. Cr. 107, 113 P. 2d 611, 615, and in many other cases this court has held that a person may waive the rights guaranteed to him by the Bill of Rights of our Constitution; the rule is well stated thus:

"Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss"; and the question as to "whether one accused of crime has waived his right * * * must depend in each case upon the particular facts

and circumstances surrounding that case, including the background, experience, and conduct of the accused."

The assistant county attorney who was present at the preliminary examination and observed the defendant's physical and mental condition and knew the facts concerning his forced attendance to testify was of the opinion that the defendant, Perry, did not waive his constitutional right to immunity on account of incriminatory evidence given by him in said hearing and so stated in the written motion to dismiss filed by him with the district court. This attitude of the county attorney, whose only desire was to see that justice was done, is commendable and carries great weight with this court in determining whether the accused had effectively waived his constitutional right to immunity, and further whether the confession made by him was without compulsion in its inducement and with a full knowledge of the nature and consequences of the confession.

It is our conclusion that this statement of Clifford's should not have been admitted in evidence against him and was the major factor in causing the jury to return a verdict of guilty.

In our view of the case, the Special Prosecutor was guilty of grossly improper argument to the jury and there are other assignments of error all of which with one exception will not arise on a re-trial of this case. This exception concerns the effort of the Special Prosecutor to introduce proof before the jury that the defendant had pleaded guilty when arraigned before justice of the peace. In his opening statement to the jury, the Special Prosecutor stated that defendant entered a plea of guilty when taken before Judge Wayland McCarty, a justice of the peace, after he had been apprised of the charge lodged

against him. The trial court sustained the objections of counsel for defendant to such statement with this statement, "that will be ruled on when the evidence is offered, it will be withheld from the jury's consideration at this time."

The record discloses that the Special Prosecutor placed Clint Miers on the witness stand to testify concerning the alleged plea of guilty by the defendant when arraigned before the justice of the peace. The court did not make a ruling on the objections by counsel for defendant, but said "the court will reserve ruling on that." The witness was not recalled by the Special Prosecutor and the evidence of what Perry said in the justice of the peace court upon arraignment was never given to the jury.

In Heath v. State, 23 Okla. Cr. 382, 214 P. 1091, 1093, it is stated:

"Upon a plea of guilty, no trial upon the question of the defendant's guilt can be had. His plea stands in the place of the verdict of a jury finding him guilty, and for this reason we think that a withdrawn plea of guilty, for which, by authority of law and of the court, a plea of not guilty is substituted would not be admissible in evidence against the defendant as a confession nor as an admission against interest. In our opinion the rule supported by reason and authority is that a withdrawn plea of guilty, for which a plea of not guilty is substituted by authority of court, is not admissible in evidence against the defendant."

This question was also considered at length in the case of Frantz v. State, 70 Okla. Cr. 214, 105 P. 2d 561, 564, in which Judge Barefoot speaking for the court stated:

"Other decisions support the petitioner's contention that a plea of guilty withdrawn by leave of court is not

admissible on the trial of the issue arising on the substituted plea of not guilty. * * * We think that contention is sound. A plea of guilty differs in purpose and effect from a mere admission or an extra judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. * * * But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. * * * The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just. * * *

" 'The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight the court reinstated it pro tanto. Heim v. United States, supra, [47 App. D. C. 485] 493, [L. R. A. 1918E, 87]. The conflict was not avoided by the court's charge. Giving to the withdrawn plea any weight is in principle quite as inconsistent with the prior order as it would be to hold the plea conclusive. Under the charge, if the plea was found not improperly obtained, the jury was required to give it weight unless petitioner was shown to be innocent. And, if admissible at all such plea inevitably must be so considered. *As a practical matter, it could not be received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court awarding him a trial. Its introduction may have turned the scale against him.* "The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding

its withdrawal, it may be used in evidence under the plea of not guilty." White v. State, supra, [51 Ga. 285], 289, 290. It is beside the mark to say, as observed by the Circuit Court of Appeals, that petitioner knew better than any one whether or not he was guilty and that under the evidence of a plea of guilty was a reasonable thing. These suggestions might bear upon the weight of admissible evidence but they have no relation to the admissibility of a withdrawn plea.

" 'Courts frequently permit pleas of guilty to be withdrawn and pleas of not guilty to be substituted. We have cited all the decisions, state and federal, which have come to our attention, that pass on the question here presented. The small number indicates that in this country it has not been customary to use withdrawn pleas as evidence of guilt. Counsel have cited no case, and we have found none, in which the question has been considered in English courts.' "

Because of the errors above noted, this case will have to be reversed. As to whether the prosecution should be dismissed is a matter addressed to the sound discretion of the trial court. It is our opinion, in view of the motion to dismiss filed by the county attorney, that the action should be dismissed, but the trial court is in a better position to render judgment on this matter than we are and he is not subject to criticism if in his discretion he directs the prosecution to proceed against the defendant.

The record discloses that the trial was handled throughout by the Special Prosecutor hired by Clifford. The witnesses were all examined by him. The opening statement to the jury and principal argument were delivered by him. Special counsel hired by private interests should never supersede the county attorney in the prosecution of a criminal case. As to the rights and duties of a Special Prosecutor, we direct attention to the statement

by this court in the case of Cole v. State, 83 Okla. Cr. 254, 175 P. 2d 376.

The judgment of the district court of Oklahoma county is reversed.

BAREFOOT, P. J., and BRETT, J., concur.