**John W. RUSSELL, Jr., District Attorney, 27th District Attorneys' District, State of Oklahoma, Petitioner,**

v.

**Honorable Lester D. HENDERSON, Assigned District Judge, Respondent.**

**No. 54208.**

Supreme Court of Oklahoma.

Nov. 28, 1979.

---

Lloyd Payton, Muskogee, Paul Ferguson, Edmond, for petitioner.

Jan Eric Cartwright, Atty. Gen., Barry Albert, David W. Lee, Danny K. Shadid, Timothy S. Frets, Asst. Attys. Gen., for respondent.

L. Jack Barton, Dist. Atty., Woodward, for Oklahoma District Attorneys' Ass'n, amicus curiae.

HARGRAVE, Justice.

The Grand Jury of Wagoner County returned an accusation for removal against petitioner, John W. Russell, District Attorney of the 27th District Attorneys' District, on August 21, 1979, alleging petitioner habitually or willfully neglected the duties of that office. The accusation sets forth seven areas of neglect in addition to gross partiality in office. On September 13, 1979, upon the order of the Presiding Judge of the East Central Judicial Administrative District, hearing was held in the District Court of Wagoner County. Hearing was held on various motions, one of which was a motion to dismiss treated in substance as a demurrer. The accusation was sustained except for Paragraph No. 4, which was stricken. Petitioner now requests assumption of original jurisdiction in this Court and prays for a writ of prohibition to prevent further proceedings in the premises on the ground that the District Court erred in holding the accusation sufficient, in any respect, as against the demurrer.

The issue presented here by the Application to Assume Original Jurisdiction is: shall this court exercise its discretionary original jurisdiction to review a trial court's order in effect overruling the demurrer of Petitioner in the face of the ordinary avenue of redress, in this instance an appeal from a verdict and judgment in the event of an adverse jury verdict. Conceding the Respondent is correct in his statement that this court is reluctant to assume jurisdiction to review orders not yet final[1] we have assumed jurisdiction and ruled upon constitutional questions in the instance where a ruling upon a demurrer was not final for lack of a dismissal order. *State ex rel. Grand Jury v. Pate, District Judge, 572 P.2d 226 (Okl.1977).* There this court noted the general public concern surrounding the important function of the grand jury in this governmental system, and assumed jurisdiction to rule on the power of that body. The question posed here relative to the power of the grand jury to present an accusation for removal of a District Attorney and the allegations necessary to properly plead that accusation are matters *publici juris.* Additionally, the presence of other ongoing proceedings which make an early decision necessary if the public weal and judicial economy are to be served lead us to conclude that the application to assume original jurisdiction should be granted.

We first address petitioner's contention that a District Attorney can only be removed from office by impeachment. This proposition derives from Article 8, Section I of the Constitution of the State of Oklahoma, as adopted in 1966, which provides in part:

"The Governor and other elective State Officers, including the Justices of the Supreme Court, shall be liable and subject to impeachment for willful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude committed while in office. All elected state officers . . "

The petitioner asserts that the District Attorney's office is an elective state office, and thus the officer may only be removed by impeachment. This argument fails. First, this court has previously and correctly referred to the impeachment proceedings as applicable to state officers who are elected by the qualified voters of the entire state. *State v. Freeman, 440 P.2d 744 (Okl. 1968).* Second, Section 2 of Article VIII of the Constitution provides that all elective officers are subject to removal from office as provided by statutory law, unless subject to impeachment. The general policy behind this section of the Constitution of Oklahoma is to subject all elective officials to removal by statute except those excluded by the applicability of the impeachment provision of Article VIII, Section 1. No provision of § 1 subjects District Attorneys to impeachment, and we therefore hold the general removal provisions of Section 2 apply. Such a posture is consistent with our past holding to the effect that a member of the judiciary elected within a district and not by the state citizenry at large is subject to removal under the provisions of 22 O.S.1971 § 1181, et seq. *Graham v. Cannon, 574 P.2d 305 (Okl.1978).* The import of *Graham, supra,* and *State v. Freeman, supra,* is that this court is committed to the principle that impeachment is reserved for officials elected on a state-wide ballot under Article VIII, Section 1 of the Oklahoma Constitution as amended in 1966. Thus the District Attorney is subject to removal by the statutory processes the legislature has seen fit to provide. One such provision was effective four months after the last constitutional amendment of Article VIII, Section 1, and was passed approximately one month after the approval of the amendment, and it is 19 O.S. § 215.16. This statute provides, among other things, that the District Attorney is to be subject to removal from office in the same manner as the County Attorney.[2]

---

1. *Hubbard v. Board of Trustees of the Police Pension Fund, 322 P.2d 207 (Okl.1958).*

2. 19 O.S.1971 § 215.16 provides: "The District Attorney shall exercise and perform all the powers, duties and functions provided by law for the county attorney of each county, and

Reference is therefore made to 22 O.S. 1181 et seq. Chapter 23 of Title 22, Okla.Statutes. Under § 1181 of that title, any officer not subject to impeachment elected or appointed to any state, county, township, city, town or other office may be removed by the provisions of §§ 1181–1197 of Title 22.

Petitioner's attempted classification of the office of District Attorney as a State officer does not avoid the foregoing discussion in the light of 22 O.S. 1182. That last-mentioned statute clearly provides State officials (not subject to impeachment) are properly answerable to an accusation presented by a grand jury of the county in which such officer resides, or in which he has his place of office for the usual transaction of official business. 22 O.S. 1182 provides:

"An accusation in writing, charging such officer with any of the causes for removal mentioned in the first preceding section, may be presented by the grand jury to the district court of the county in or for which the officer is elected or appointed: Provided, that in the case of a State officer, such accusation may be presented by the grand jury of the county in which such officer resides, or in which he has his place of office for the usual transaction of official business."

The Petitioner's remaining contention is that the accusation for removal fails to state facts sufficient to constitute a cause of action for removal from office. The accusation as returned by the grand jury alleges seven counts of habitual or willful neglect of duty under 22 O.S.1971 § 1181 (First) and one count of gross partiality under 22 O.S.1971 § 1181 (Second). Here the underlying objection to all eight counts of the accusation is that they all allege ultimate conclusions and not, as is assertedly required by the removal statute under consideration, the facts out of which these conclusions are to be drawn by the jury.

In *State ex rel. Grand Jury of McCurtain County v. Pate, 572 P.2d 226 (Okl.1977)* this Court concluded that an ouster proceeding has attributes in the nature of both a civil and criminal proceeding, and that strict construction of a grand jury accusation as in a criminal indictment should not be applied. The reasoning behind this statement is contained in a much earlier case, *Rutter v. Territory, 11 Okl. 454, 68 P. 507 (1902):*

> . . . [T]here is good reason for this position found not only in the express direction of the statute . . . but also in the fact that no criminal punishment is imposed as a result of a verdict of guilty of the matters charged in the accusation; but that the judgment founded thereon shall be "removal from office"—a relief which should be ready, speedy and accessible in behalf of the people who have selected the official, and who ought to, if the charge of the corruption and willful misconduct of officials whom they have elected has been sustained upon an accusation expressed in such plain and simple language as that a person of plain and common understanding may know what is intended.

This Court is committed to the rule that an accusation for removal is not to be judged sufficient or insufficient as a criminal indictment. *State ex rel. Grand Jury of McCurtain County, supra,* noted the holding therein was not inconsistent with *State v. Scarth, 151 Okl. 178, 3 P.2d 446 (1931),* wherein it was stated in the third Court Syllabus that where the removal statutes do not adequately provide the procedure to be used therein, civil procedure will be invoked. 12 O.S.1971 § 264 provides the mandatory requirements of a petition in a civil action and is the source from which the requirement that an Oklahoma petition allege facts constituting the cause of action derives. 12 O.S.1971 § 264 provides *inter alia:*

shall appoint all of his assistants. Wherever in the statutes of Oklahoma in existence at the effective date of this act, reference is made to the county attorney, the District Attorney, acting personally or by his duly appointed assist-

ant, shall perform all the powers, functions and duties, and be subject to removal from office and to all the obligations and liabilities and shall stand in the stead of the county attorney under such statutes."

"The petition must contain

. . . . .

Second. A statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition."

This requirement that a petition in a civil action must allege the facts which entitle the pleader to relief is consistent with the expressed requirements for an accusation under 22 O.S.1971 § 1183 providing:

"The accusation must state the offense charged, in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended."

In the case of *Bates v. Old Mac Oil Co., 271 P.2d 315 (Okl.1954)* this court stated that it is an elementary principle that pleadings should allege the ultimate facts which are to be established and not mere legal conclusions, citing therein 71 C.J.S. Pleading § 14:

"A pleading which depends on conclusions of law, without properly stating the facts on which they are based, is fatally defective. In other words, a conclusion of law cannot obviate the necessity of setting out essential facts."

*Bates, supra,* states our jurisdiction has uninterruptedly recognized this rule, and more recently the court's adherence to the rule has been reiterated in *Washington v. World Publishing Company, 506 P.2d 913 (Okl.1973),* at p. 917 wherein it is stated that allegations based largely, *if not completely* upon legal conclusions without a concise statement of the facts are insufficient and demurrable. The petitioner did not admit these conclusions unsupported by evidentiary facts found in the accusation by his demurrer. *State v. Liberty National Bank & Trust Co., 414 P.2d 281 (Okl.1966).*

■ Where the proceeding is designed to remove a public official such as that before us now the importance of alleging facts which must be borne out at trial with evidentiary proof thereof is essential. The proceeding is held to partake the nature of both a civil and criminal proceeding, *State*

*ex rel. Grand Jury v. Pate, supra.* For this reason, it is essential that the civil requirement of fact pleading must be strictly applied, inasmuch as the more rigorous requirements of a criminal indictment are not necessary. In this regard, our conclusion is borne out by the earlier case of *Robberson v. Board of County Commissioners, 109 Okl. 239, 235 P. 525 (1925).* Therein one issue presented on appeal was whether the charges presented referring to alleged insanity of the officeholder stated a cause for removal. The Court determined that even if insanity were a ground for removal, "Insanity is a matter of diagnosis, and the fact must be determined from the symptoms. Insanity is not charged in the petition, there being no symptoms stated, . . .". The Court then discussed whether the other two grounds alleged or stated facts sufficient to constitute a cause of action under § 2396 of the Compiled Statutes of Oklahoma, the immediate precursor of 22 O.S.1971 § 1183:

"As to the other two grounds stated in the petition, we think they could have been alleged more definitely, but defendant did not ask for it. It is stated that he refused to sign legal papers when presented to him by members of the bar *and then a particular instance given,* and also that he was oppressive in the administration of his office, and *then two particular* instances *are given.*"

As respecting the first count, (of insanity) this Court stated the charge was "too general and indefinite to state any ground for removal from office" but held the other two charges sufficient. On the one hand the Court stated insanity was not charged, there being no symptoms of that fact plead. The other two grounds were held good for the general charge was supported by a specific instance of it in the pleadings. This case is squarely in point and the holding therein is in accord with the Court's present view of the subject, and that is that facts must be plead to support the causes for removal alleged only in the language of the statute.

■ We need prolong this opinion no further than to state that the several charges made all are couched in terms of generalities and not supported by ultimate facts as *Robberson, supra,* states "specific instances" of facts from which the conclusions plead may be drawn. Inasmuch as the failure in this regard is complete, the accusation was demurrable and the trial court erred in refusing to so hold.

This Court has sought from the parties briefs pertaining to applicability of multi-county grand jury provisions to this action. We reject their applicability to this case on the basis that those provisions are not the exclusive remedy afforded for the malfeasance or nonfeasance of a District Attorney. Inasmuch as we find that remedy not to be exclusive, the only issue properly before the Court at this time is the applicability of a county grand jury proceeding and the exactitude of the procedure undertaken in this action.

WRIT OF PROHIBITION ISSUED TO PROHIBIT FURTHER PROCEEDINGS, PURSUANT TO ACCUSATION FAILING TO STATE A CAUSE OF ACTION.

LAVENDER, C. J., and WILLIAMS, BARNES, SIMMS and DOOLIN, JJ., concur.

IRWIN, V. C. J., and OPALA, J., concur in part and dissent in part.

HODGES, Justice, dissenting.

I dissent for the reason I would refuse to assume jurisdiction.

1. The pertinent part of 22 O.S.1971 § 1182 provides:
 "An accusation in writing, charging such officer with any of the causes for removal mentioned in the first preceding section [1181] may be presented by the grand jury to the district court of the county in or for which the officer is elected or appointed: *Provided, that in the case of a State officer, such accusation may be presented by the grand jury of the county in which such officer resides, or in which he has his place of office for the usual transaction of official business.* [emphasis added]

OPALA, Justice, concurring in part and dissenting in part:

Our original jurisdiction was invoked to prohibit the respondent-judge from proceeding further in an ouster case against the petitioner, a district attorney, because the allegations in the grand jury accusation, returned under the provisions of 22 O.S. 1971 § 1181 et seq., lack the degree of specificity required by due process standards of Art. 2 § 7, Okl.Con. The court's opinion grants the writ on the basis of the contention advanced. I cannot accede to the court's disposition. The case presents several troubling first-impression issues which have received no in-depth exploration. Unless these questions are settled in advance of further proceedings in this case, I fear that all future attempts to make this district attorney answerable for the misconduct of which he stands accused will prove equally fruitless. My concern is with the situs and territorial perimeter of a grand jury inquest into the activities of a multi-county district attorney's office. Oklahoma's prosecutorial districts range in size from three which are composed of a single county to one that embraces six and at least two with five counties. 19 O.S.1971 § 215.1; 1977 Report on the Judiciary published in compliance with the provisions of 20 O.S. 1971 § 16.11, p. 13. If we accord literal meaning to the inquest-situs proviso in § 1182,[1] all multicounty district attorney's offices would be vulnerable to both successive and concurrent grand jury investigations in every county within the district, while prosecutors elected in a single-county district—who are shielded from multiple inquest exposure—would be the beneficiaries of a vastly more favorable treatment.[2]

 If we should literally construe the italicized part of § 1182, a multicounty district attorney's "place of office" would be in *every courthouse* within his district. This is so because "official business" must be transacted in all court facilities of the district.

2. An ordinary grand jury inquest is confined by law to offenses *committed or triable* in the county. 22 O.S.1971 §§ 311, 324, 331; *Oklahoma Tax Commission v. Clendinning,* 193 Okl. 271, 143 P.2d 143, 144 [1943]; *Bennett v. District Court of Tulsa County,* 81 Okl.Cr. 351, 162 P.2d 561, 570 [1945]. Since the 1971 amend-

The office of the district attorney, whether comprising one or more counties, is by statute, 19 O.S.1971 § 215.1, a single entity or unit which is neither functionally divisible nor territorially apportionable. The prosecutor is by law accountable for an acceptable level of service performance in the entire district. His responsibility is not delegable to any person other than the appointed assistants in the office who also serve the district as a whole.[3] Just as the prosecutor's office represents and is to be regarded as a functional and territorial integrity, so must be the officeholder's performance of service when his activities are under inquest. His official conduct cannot be anatomically dissected nor territorially dismembered. He must be judged on the basis of the office's unfragmented whole—i. e. *his total performance in all the courthouses of the district of which his "office"* is legally comprised. That, and no less, appears to be due him. This is no less than what he would be entitled to if ouster were sought by action instituted by the Attorney General. See 51 O.S.1971 § 91 et seq. While as a public official the district attorney may not be civilly liable under the doctrine of *respondeat superior* for any misconduct of his subordinates, he *stands answerable even in private litigation* for wilful or wanton negligence in supervising any member of his staff and in selecting improper personnel for employment, as well as for directing or authorizing any subordinate's act of misconduct.[4] To the public, upon inquest, his accountability *for the entire office* is measured by the removal grounds set forth in § 1181. The office, with all its personnel, is hence to be viewed for inquest purposes as *one unbreakable unit* and not as a number of counties over which the district extends. *An inquest into a multicounty public office, when confined in scope to one county, is as lacking in*

*elemental fairness as is the performance rating of a metropolitan hospital which results from a management study of a single bed or ward, or the efficiency evaluation of a department made on the basis of activity that occurs at only one of the numerous desks.*

Petitioner is a multicounty district attorney whose office is territorially coextensive with District No. 27. It includes Adair, Cherokee, Sequoyah and Wagoner Counties. If his allegedly submarginal level of performance as a prosecutor may be the subject of grand jury scrutiny that is limited to a preselected, severed part of the whole territory under his charge, he could be deprived of the opportunity to receive consideration on the basis of a total performance evaluation of his administrative prowess— the benefit affordable by law to all those of his colleagues in the state who are elected for service in a single county.

Any construction of § 1182 which sanctions multiplicity of territorially separated—consecutive or concurrent—inquests in a district cannot pass constitutional muster. It would plainly offend several valued principles of our fundamental law.

The due process clause in Art. 2 § 7, Okl.Con. has a content coextensive with its federal counterpart. The latter, and hence our own, embraces within its terms protection from unreasonable or unreasoned classification serving no important or legitimate governmental objectives.[5] The Equal Protection Clause of the XIV Amendment to the Federal Constitution and Art. 5 § 59, Okl.Con. both prohibit classification which lacks a rational basis. All these proscriptions strike *with equal force* at contravening legislation as they do at *judicial construction that leaves in its wake unexcised infirmities—either explicit or implicit.* When a statute is susceptible of more than

ment of Art. 2 § 18, Okl.Con., *special multicounty grand jury inquests have become constitutionally permissible.*

**3.** 19 O.S.1971 § 215.4; *Neill v. State,* 89 Okl.Cr. 272, 207 P.2d 344, 347 [1949]; *Perry v. State,* 84 Okl.Cr. 211, 181 P.2d 280, 285 [1947]; *State ex rel. Blankenship v. Atoka County, Okl.,* 456 P.2d 537, 538 [1969].

**4.** 22 O.S.1971 § 1181; *Hazlett v. Board of County Commissioners, Muskogee County,* 168 Okl. 290, 32 P.2d 940, 944 [1934].

**5.** *McKeever Drilling Co. v. Egbert,* 170 Okl. 259, 40 P.2d 32, 36 [1935]; *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 [1979]; *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 [1954].

one meaning, it must be given that which makes it impervious to constitutional attack.[6]

Saddled with their literal meaning, the inquest-situs provisions of § 1182 could not stand here as constitutionally permissible. In their application to the multicounty prosecutor, these provisions must be restricted to authorize an inquest solely in the county where that official resides. This can be easily accomplished by declaring the county of the prosecutor's residence to be also "his [only] place of office for the usual transaction of official business" within the meaning of § 1182.[7] By means of this construction § 1182 would thus be purged of its implicit constitutional vice and equal treatment could be afforded under its terms to all state prosecutors faced with an office conduct inquest. Multicounty grand juries, authorized by the 1971 amendment to Art. 2 § 18, Okl.Con.[8] and implemented legislatively in 74 O.S.Supp.1979 § 18b, subdiv. (r)[9] should be utilized to inquire into district-wide activities of any multicounty prosecutor whose conduct in office is under investigation.

I would therefore instruct the Attorney General that should he desire further to pursue an investigation of the petitioner *qua* District Attorney, a grand jury should be called in the county of petitioner's residence for a multicounty inquest into the district-wide activities of his office.

I would hold that the only constitutionally permissible situs of a grand jury inquest into a multicounty District Attorney's office is in the county of the affected official's residence and that the inquest, which must be made by a multicounty grand jury convened as authorized and provided by Art. 2 § 18, Okl.Con. and 74 O.S.Supp.1979 § 18b, subdiv. (r), is to have a territorial perimeter coextensive with the prosecutorial district to be investigated.[10]

I am authorized to state that IRWIN, V. C. J., concurs in these views.

6. *Wilson v. Foster,* Okl., 595 P.2d 1329, 1333 [1979]; *Neumann v. Tax Commission,* Okl., 596 P.2d 530, 532 [1979].

7. *This construction of the inquest-situs proviso in § 1182 would impart to grand jury ouster proceedings the very same venue regime as that provided for ousters by action,* 51 O.S.1971 § 94, which is a cumulative remedy. *State v. Davenport,* 79 Okl. 297, 193 P. 419, 421 [1920]. An agency of government *may have its "office" for venue purposes in only one county,* although its members are not prohibited from conducting their official activities in all other counties of the state. *State v. District Court of Bryan County,* Okl., 290 P.2d 413, 417 [1955].

8. In pertinent part, Art. 2 § 18, Okl.Con., as amended in 1971, provides:
"* * * or such grand jury shall be ordered convened upon the filing of a verified application by the Attorney General of the State of Oklahoma who shall have authority to conduct the grand jury in investigating crimes which are alleged to have been committed in said county *or involving multicounty criminal activities; when so assembled such grand jury shall have power to inquire into and return indictments for all character and grades of crime. All other provisions of the Constitution or the laws of this state in conflict with the provisions of this constitu-*

*tional amendment are hereby expressly repealed."* [emphasis added]

9. The terms of 74 O.S.Supp.1979 § 18b, subdiv. (r) so far as pertinent, are:
"The duties of the Attorney General as the Chief Law Officer of the State shall be:
* * * * * *
*(r) To convene multicounty grand juries in such manner and for such purposes as provided by law; provided, such grand juries are composed of citizens from each of the counties on a pro rata basis by county."* [emphasis added]
A grand jury's power to make an inquest into the conduct of a public office and return an ouster accusation *is implied* from its constitutional grant of power to inquire into "all character and grades of crime." We upheld it in *State ex rel. Grand Jury of McCurtain County v. Pate,* Okl., 572 P.2d 226, 227–228 [1977].

10. *Selection of situs,* which affects venue of ouster action, is critical in inquests into an officeholder's conduct. Situs, once chosen, becomes trial venue. It cannot be changed by the court except on accused officeholder's request. 22 O.S.1971 § 1195; *Reubin v. Thompson,* Okl., 406 P.2d 263, 266 [1965].