BEEZER, Circuit Judge:
We consider whether Montana’s Dangerous Drug Tax Act violates the Fifth Amendment’s proscription against double jeopardy.
The district court for the district of Montana affirmed the bankruptcy court’s ruling that a $100-an-ounce marijuana tax levied pursuant to the Act violated the Fifth Amendment. The Montana Department of Revenue (“Revenue”) appeals, arguing that the drug tax is not a punishment and that its imposition against the Kurths does not violate double jeopardy. The Kurths maintain that a criminal penalty by any other name is still a criminal penalty, and that the district court properly relied on United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) in holding the drug tax as applied is unconstitutional. We affirm.
I
The extended Kurth family entered the marijuana-growing business “with but one purpose—that of making large sums of money just as fast as possible in order to pay off a large debt against the family farm.” Montana v. Kurth, No. DC-87-018 Judgment and Sentencing Order at 3 (Mont.12th Dist.Ct., July 18, 1988).
The Kurths cultivated marijuana for about a year and a half before discovery by law enforcement officials. On October 18, 1987, officers raided the farm and seized 2155 marijuana plants, 1811 ounces of harvested marijuana and several gallons of marijuana derivatives. They also arrested the Kurths, who were subsequently charged with the criminal possession and sale of dangerous drugs.
Shortly before the Kurths’ arrests, Montana’s Dangerous Drug Tax Act was enacted. See Mont.Code Ann. §§ 15-25-101 through 123 (1987).[1] The arresting officer’s Drug Tax Report describing the sub *1310 stances found at the Kurth farm was the first ever sent to the Montana Department of Revenue. Pursuant to the Act, Revenue assessed a drug tax against the Kurths. The assessment ultimately totaled nearly $865,000 for the marijuana plants, harvested marijuana, hash tar, and hash oil.
The Kurths administratively challenged both the method of computation and the legality of the assessment. This challenge was suspended pending resolution of the Kurths’ criminal charges. In July 1988, the Kurths all pleaded guilty and received individual sentences.
The Kurths then filed a voluntary petition in bankruptcy under Chapter 11, again staying the administrative proceeding. In February 1989, Revenue filed an amended proof of claim with the bankruptcy court which was challenged by the Kurths and the trustee in bankruptcy.
In May 1990, following a bench trial, the bankruptcy court denied Revenue’s claim. The court determined that the taxes on the plants, hash tar, and hash oil were arbitrary, capricious, and violative of the drug tax statute. The court also concluded that although the remaining $208,105 tax on the harvested marijuana was computed in compliance with the statute, its application here violated the Kurths’ constitutional rights; the tax assessment served to punish the Kurths a second time for conduct to which they had pleaded guilty and been punished. Relying particularly on Halper, the court determined that this “second punishment” violated the double jeopardy clause of the Fifth Amendment. In re Kurth Ranch, 145 B.R. 61 (Bankr.D.Mont., 1990).
The district court affirmed the bankruptcy court’s order. Drummond v. Dept. of Revenue, No. CV-90-084-PGH, 1991 WL 365065, at *4 (D.Mont., April 23, 1991). Revenue does not challenge the bankruptcy and district court’s holding that the original assessment of $865,000 was arbitrary and capricious; Revenue appeals only the determination that the $208,105 tax on the harvested marijuana is unconstitutional.
II
We review de novo a challenge to the constitutionality of a state statute. Jackson Water Works, Inc. v. Public Util. Comm’n, 793 F.2d 1090, 1092 (9th Cir. 1986), cert. denied, 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 184 (1987).
The Double Jeopardy Clause of the Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. United States v. Halper, 490 U.S. at 440, 109 S.Ct. at 1897. The third of these protections is at issue in this case.
The multiple-punishment prohibition applies only when the State attempts to criminally punish a defendant twice for the same offense. United States v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). The clause does not bar the State from imposing both a civil and a criminal penalty upon a defendant for the same offense, Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), nor is the State barred from imposing a criminal and civil sanction in a single proceeding, as long as the court determines that "the total punishment [does] not exceed that authorized by the legislature." Halper, 490 U.S. at 450, 109 S.Ct. at 1903 (citing Missouri v. Hunter, 459 U.S. 359, 368-69, 103 S.Ct. 673, 679-80, 74 L.Ed.2d 535 (1983)). A disproportionately large civil sanction imposed in a subsequent civil proceeding, however, may constitute "punishment" within double jeopardy’s multiple-punishment prohibition. Id.
Although the Montana statute labels the assessment as a “tax,” this in itself is not dispositive as to whether this imposition constitutes an impermissible second punishment. A state cannot evade the prohibitions of the federal constitution merely by changing the label of the punishment. Indeed, “ ‘labels affixed either to the proceeding or to the relief imposed ... are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law.’ ” Id. 490 U.S. at *1311 448, 109 S.Ct. at 1901 (quoting Hicks v. Feiock, 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988)). The determination whether a civil sanction constitutes punishment “requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve____ [A] civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.” Id.
Punishment serves the twin aims of retribution and deterrence. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963). The Supreme Court teaches us that “a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.” Halper, 490 U.S. at 448, 109 S.Ct. at 1902.
The Court has succinctly described the reason for the rule:
Where a defendant previously has sustained a criminal penalty and a civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as “punishment” in the plain meaning of the word, then the defendant is entitled to an accounting of the Government’s damages and costs to determine if the penalty sought in fact constitutes a second punishment.
Id. at 449-50, 109 S.Ct. at 1902.
Under Halper, the double jeopardy analysis requires the trial court to determine whether there is a rational relationship between the sanction imposed and the damages suffered by the government. Although the trial court’s determination may often be no more than an approximation, “even an approximation will go far towards ensuring both that the Government is fully compensated for the costs of corruption and that, as required by the Double Jeopardy Clause, the defendant is protected from a sanction so disproportionate to the damages caused that it constitutes a second punishment.” Id. at 450, 109 S.Ct. at 1903.
Finally, the rule in Halper is limited to “the rare case ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused.” Id. at 449, 109 S.Ct. at 1902.
It should be noted that Hal-per ’s disproportionality analysis is required only in those cases where there has been a separate criminal conviction. A state may legitimately tax criminal activities. See Marchetti v. United States, 390 U.S. 39, 44, 88 S.Ct. 697, 700, 19 L.Ed.2d 889 (1968). Moreover, there is no need for the civil sanction to be tied to any remedial analysis when it is imposed apart from a criminal conviction. See Commonwealth Edison Co. v. Montana, 453 U.S. 609, 623, 101 S.Ct. 2946, 2956, 69 L.Ed.2d 884 (1981).
Where the case does involve a previous criminal conviction, however, special considerations come into play. Here, the most relevant consideration is the character of the sanction and whether it may fairly be called punitive in nature. See Halper, 490 U.S. at 449-50, 109 S.Ct. at 1902-03. This distinguishes this case from those cited by Revenue which hold a marijuana tax to be non-punitive, but do not involve a previous criminal conviction. See Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969); United States v. Sanchez, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950); see also Simmons v. United States, 476 F.2d 715, 718-19 (10th Cir. 1973).
III
The Kurths were criminally prosecuted for possession and sale of dangerous drugs. The double jeopardy analysis under Halper applies. If the additional civil sanction appears sufficiently disproportionate to the remedial goals claimed by Revenue, the Kurths are entitled to an accounting in order to determine if the sanction constitutes an impermissible additional punishment.
*1312 The record in this case, however, is devoid of the information necessary to make a determination of proportionality. Despite opportunities to do so before the bankruptcy and district courts, Revenue refused to make any showing regarding the costs incurred in eradicating dangerous drugs and their effects.
Revenue asks us to take judicial notice of the high but incalculable cost of drug abuse on the state of Montana. Certainly, other federal courts have noted the staggering costs associated with fighting drug abuse in this country. See United States v. A Parcel of Land with a Bldg. Located Thereon, 884 F.2d 41, 44 (1st Cir.1989) (discussing the “billions the government is being forced to spend” on enforcing drug laws). Indeed, the Montana Supreme Court has recently addressed this very issue and found that the marijuana tax “is not excessive in relation to the remedial purposes addressed in § 15-25-122.” Sorenson v. Montana Dep’t of Revenue, 836 P.2d 29, 31 (Mont.S.C.1992).
We observe that the Sorenson court did not require the State to make any showing regarding its costs and expenses.[2] Absent even a “rough” showing by the State regarding its actual costs in the case, we see no reason to question the district court’s refusal to “take judicial notice” of drug abuse’s general costs to society.[3]
We agree with the bankruptcy court, as did the district court, that allowing the state to impose this tax, without any showing of some rough approximation of its actual damages and costs, would be sanctioning a penalty which Halper prohibits.
By refusing to offer any evidence justifying its imposition of the tax, the State has failed to meet the threshold requirements under Halper. We do not hold the Montana marijuana tax is unconstitutional on its face; we do hold it is unconstitutional as applied against the Kurths. The tax assessment levied by Revenue in this case constitutes an impermissible second punishment in violation of the federal Constitution’s Double Jeopardy Clause.
The judgment of the district court is AFFIRMED.

. The Montana legislature amended this law in 1989 and again in 1991. Revenue assessed the taxes under the 1987 version. See Mont.Code Ann. §§ 15-25-101 through 123 (1987).

. In fact, the court did not believe Halper was implicated at all: "a tax requires no proof of remedial costs on the part of the state.” Id. at 33. The Court also noted that its tax was "comparable to those in other states and also comparable to the amounts in effect for many years during the effective period of the Federal Drug Tax Act ...” Id. at 33. As we have noted, this ignores the particularized double jeopardy inquiry required under Halper.

. This case is distinguishable from United States v. Walker, 940 F.2d 442, 444 (9th Cir.1991), where we upheld a district court decision that imposed a $500 sanction for importation of marijuana and that took judicial notice of the "financial burden associated with maintaining check points and administering the customs system.” In the case before us, the district court refused to take "judicial notice” of the general costs of drug law enforcement, and construed Halper to require a more particularized showing of the actual damages to the State.