**STATE OF CONNECTICUT, ex rel.
Richard BLUMENTHAL, Attorney
General of Connecticut, Plaintiff,**

v.

**TOBACCO VALLEY SANITATION
SERVICE COMPANY, et al.,
Defendants.**

No. 2:92CV00584 (PCD).

United States District Court,
D. Connecticut.

April 7, 1993.

Steven Rutstein and Robert Langer, Hartford, CT, for plaintiff.

Jeremiah Donovan, Old Saybrook, CT James Wade, Craig Raabe, Hartford, CT, Dan LaBelle, Manchester, CT, Kurt F. Zimmerman, New Haven, CT, Jeffrey Stephens, Greenwich, CT, Edward Spinella, Hartford, CT, Nathan Silverstein, New Haven, CT, and Eric Wiechmann, Hartford, CT, for defendants.

## RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Plaintiff alleges violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and the Connecticut Antitrust Act, Conn.Gen.Stat. §§ 35–24 to –45. Defendants[1] move to dismiss.

### I. *Background*

Plaintiff State of Connecticut ("the State") alleges that defendants, seven corporations that engaged in refuse removal and their individual owners, officers, and agents, engaged in a continuing combination or conspiracy which unreasonably restrained interstate trade. Specifically, the State alleges that, from as early as June of 1982 and continuing at least until May of 1987, defendants suppressed competition by allocating customers among themselves for commercial-industrial refuse removal services in the Hartford County area. Plaintiff prays for relief in the form of a judgment against defendants, joint-

---

1. This ruling applies only to defendants Angelo Squillante and Admiral Trucking, as this matter has been reported settled as to all other defendants.

**506**

ly and severally, for treble damages sustained by the State, for damages sustained by persons residing in the State, and for damages to the general economy of the State. Plaintiff also requests a permanent injunction enjoining defendants and their successors from continuing or renewing the conspiracy, a civil penalty to be paid to the State for each violation of the Connecticut Antitrust Act pursuant to Conn.Gen.Stat. § 35–38, an award of the costs of suit, including reasonable attorneys fees, and any other relief that the court deems proper.

Defendants move to dismiss under Fed. R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, and under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants argue that the present action is barred by both state and federal constitutional protections against double jeopardy. In a prior action initiated in 1990, the United States criminally prosecuted defendants under § 1 of the Sherman Act based on the same course of conduct complained of by the State here. In July of 1991, a jury acquitted defendants of the Sherman Act charges.

II. *Discussion*

■ In general, when a motion to dismiss "is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first." C. Wright and Miller, Federal Practice and Procedure, Civil § 1350, p. 209–210 (1990) In this case, since both grounds for dismissal depend upon the applicability of the Double Jeopardy Clause, the challenges can be dealt with simultaneously. In deciding a motion to dismiss for either lack of subject matter jurisdiction or failure to state a claim, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The Fifth Amendment to the United States Constitution [2] provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. V. The Double Jeopardy

Clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause has been held to protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

**A. Second Prosecution After Acquittal**

■ Although this is a civil action, defendants argue that they are being subjected to a second prosecution for the same offense after acquittal, in violation of the Double Jeopardy Clause. In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court held that a defendant already punished in a criminal prosecution is protected by the Double Jeopardy Clause from the imposition of a civil penalty which is so extreme that it "may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 448–49, 109 S.Ct. at 1902. While this protection applies to a government civil suit to recover penalties not in proportion to its damages when the defendant has already been punished, it does not apply when the defendant has yet to be punished or when the penalties serve a compensatory purpose. *Id.*

The Supreme Court in *Halper* did not hold that a suit for a civil "punishment" should be considered a prosecution. The goals of punishment, *i.e.*, retribution and deterrence, were found to be achievable by civil penalties. The Double Jeopardy Clause was held to protect a defendant from a civil sanction imposed after a prior punishment when the sanction can only be characterized as serving the goals of punishment. This does not imply that a suit for such penalties should be considered a prosecution. In fact, the Court says that its decision does not "preclude[ ]

---

2. Since defendants do not provide a separate and distinct analysis under the Connecticut Constitu-

tion, only the claim that the Fifth Amendment bars this suit will be considered.

the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive." [3]

■ The Court, in distinguishing *Halper* from *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938) (allowing 150% recovery of taxes owed after criminal acquittal of tax fraud), differentiated between a second prosecution and a second punishment for purposes of double jeopardy analysis. The Court stated that the omission of the adjective criminal from the protection against multiple punishments indicates "that 'punishment' ... may arise from either criminal or civil proceedings." *Halper,* 490 U.S. at 443, 109 S.Ct. at 1899. Thus, a second prosecution only occurs when the proceedings are criminal. Determining the nature of a proceeding is a matter of statutory construction and "recourse to statutory language, structure, and intent is appropriate." *Id.* at 447, 109 S.Ct. at 1901. Since the proceedings here are clearly civil, defendants cannot rely on the multiple prosecution branch of the Double Jeopardy Clause. *See* 15 U.S.C. § 15c (1988); Conn.Gen.Stat. §§ 35–32 and 35–38 (1987).

Finally, the Supreme Court in *Halper* specifically cautioned that its holding is "for the rare case," and is not "far reaching." *Halper,* 490 U.S. at 449, 450, 109 S.Ct. at 1902, 1903. Other courts have emphasized the limited applicability of *Halper.* Most recently, the Ninth Circuit noted that "*Halper*'s disproportionality analysis is required only in those cases where there has been a separate criminal conviction." *Drummond v. Department of Revenue,* 986 F.2d 1308, 1311 (9th Cir.1993). Thus, the conclusion that a civil action which results in punishment may be considered a criminal prosecution for the purposes of double jeopardy protection should not be drawn from *Halper.*

**B. Multiple Punishments for the Same Offense**

■ Defendants argue that this action subjects them to multiple punishments for the same offense, in violation of the Double Jeopardy Clause. Even if *Halper* prohibited a suit for an extreme civil penalty after an acquittal, since the civil penalty sought here is not extreme, the Double Jeopardy Clause does not bar this suit.

Although defendants here have been acquitted, while the defendant in *Halper* had been convicted and punished criminally, defendants argue that double jeopardy nevertheless bars this action. *See Mitchell,* 303 U.S. at 398, 58 S.Ct. at 632; *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984). In both cases, the defendant had been acquitted after a prior criminal trial and the government was attempting to impose civil penalties. In each case, the Supreme Court held that the Double Jeopardy Clause was inapposite because the penalties sought were civil, not criminal, in nature. The Court examined whether Congress had intended the penalties to be punishment. *Halper* defined punishment to include civil penalties that are disproportionate to the damage caused. Here, however, especially prior to the actual calculation of damages and penalties, the civil penalties are not so extreme as to rise to the level of punishment.

Defendants claim that "treble damages plus attorneys fees and costs plus significant statutory penalties for every violation over a five year period," (emphasis omitted) cannot possibly be said to serve a remedial purpose. Defendants' Memorandum of Law in Support of Motion to Dismiss, at 9–10. However, such a recovery can be said to serve a compensatory goal. The Supreme Court has held that the primary purpose of treble damages in the antitrust context is remedial. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 636, 105 S.Ct. 3346, 3359, 87 L.Ed.2d 444 (1985). Similarly, in *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), the Court held that section 4 of the Clayton Act, which provides for treble damages, "is in essence a remedial provision." *Id.* at 485, 97 S.Ct. at 696.

---

**3.** However, this quote is not dispositive since it can be interpreted as referring only to instances where the defendant has not been punished or prosecuted.

While treble damages provides a recovery three times the actual damages, such a recovery may reasonably be considered remedial. First, treble damages do not necessarily imply that Connecticut would receive more than it lost. In antitrust cases, a non-multiplied recovery may leave a plaintiff lacking because of the difficulty in measuring actual damages. By awarding treble damages, courts guarantee that antitrust plaintiffs receive full recoveries. The Seventh Circuit has held, with respect to RICO treble damages, "[a]lthough there is some sense in which RICO treble damages are punitive, they are largely compensatory in the special sense that they ensure that wrongs will be redressed in light of recognized difficulties of itemizing damages." *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1310 n. 8 (7th Cir. 1987) *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). Multiple damages also help compensate plaintiffs for costs that are not quantifiable. For example, a state suit entails expenditure of scarce resources which otherwise could be used to protect the state and its residents from other harms.

Even if treble damages would, in this case, over compensate Connecticut for its losses, such a recovery would still not constitute punishment. *Halper* did not hold that over compensation constitutes punishment. Rather, the Court held that only if the over compensation bears no rational relation to actual compensation can the penalty be considered punishment. A recovery of three times damages is, by definition, compensative. In *Halper* the recovery was at least eight times the government's losses and expenses, and significantly, the recovery was not related to compensation in any way since the government was entitled to $2,000 per offense irrespective of the magnitude of the offense. In antitrust law, on the other hand, recovery is limited to three times damages, so the disproportionate punishment that Halper would have suffered is not felt by those who must pay treble damages.

Nor would having to pay the State's reasonable attorneys' fees and costs amount to punishment. Attorneys' fees and costs are actual expenditures, and compensating the State for its outlays is clearly remedial. The *Halper* Court, recognizing that paying for these expenses is remedial, remanded the case to give the government "an opportunity to present to the District Court an accounting of its actual costs arising from Halper's fraud, to seek an adjustment of the District Court's approximation, and to recover its demonstrated costs." *Halper*, 490 U.S. at 452, 109 S.Ct. at 1904. These costs would presumably include attorneys' fees. Moreover, antitrust law explicitly provides that attorneys' fees are recoverable.

Finally, defendants' claim that the Connecticut statutory penalties constitute punishment cannot be accepted prior to a determination of liability for the penalties and a determination of actual damages. Section 35–38 of the Connecticut General Statutes does not mandate a penalty at a specific level, rather it allows for a civil penalty of "not more than twenty-five thousand dollars" for an individual and "not more than two hundred fifty thousand dollars" for "any other person." Conn.Gen.Stat. § 35–38. Thus, unlike the mandatory penalty in *Halper*, the penalty in this case can be set at a level that does not punish defendants.

## III.  *Conclusion*

Since defendants are not being subjected to a second prosecution or a second punishment, the Double Jeopardy Clause does not bar this suit, and defendants' motion to dismiss (document # 36) is denied.

SO ORDERED.