No.   91-379 and 91-569

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

**No. 91-379**

MERLIN L. SORENSEN,

Plaintiff and Respondent,

-vs-

THE STATE OF MONTANA,
DEPARTMENT OF REVENUE,

Defendant and Appellant.

**No. 91-569**

THE DEPARTMENT OF REVENUE,

Petitioner and Appellant,

-vs-

PAUL A. WILLIAMS, JR.,

Respondent and Respondent.

**FILED**

JUL 2 1 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEALS FROM:   District Courts of the Fourth (91-379) and First
                (91-569) Judicial Districts,
                In and for the Counties of Missoula (91-379) and
                Lewis & Clark (91-569),
                The Honorable John S. Henson (91-379), Judge
                presiding and The Honorable Jeffrey M. Sherlock (91-
                569), Judge presiding.

COUNSEL OF RECORD:

        For Appellant:
            R. Bruce McGinnis, Tax Counsel, Dept. of Revenue,
            Helena, Montana   (91-379)
            Paul Van Tricht argued, Tax Counsel, Dept. of
            Revenue, Helena, Montana   (91-569)

        For Respondent:
            Clinton H. Kammerer argued, Kammerer Law Offices,
            Missoula, Montana   (91-379)
            Edmund F. Sheehy argued, Cannon & Sheehy, Helena,
            Montana   (91-569)

                                        Submitted: May 28, 1992

                                        Decided: July 21, 1992

Filed:

                        Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The Montana State Department of Revenue (DOR) appeals from two separate District Court rulings wherein the courts determined that the tax assessed by the DOR on Merlin L. Sorenson (Sorenson) and Paul A. Williams, Jr. (Williams) violated double jeopardy. We have combined these cases for appeal. We reverse.

The DOR assessed tax on Sorenson's possession of cocaine after he pled guilty to criminal possession of cocaine. In a declaratory action, the Fourth Judicial District Court granted summary judgment in favor of Sorenson finding that Montana's Dangerous Drug Tax, §§ 15-25-101, MCA et seq., is a criminal penalty and violates double jeopardy.

Likewise, after Williams pled guilty to criminal possession of marijuana, the DOR assessed tax on the marijuana Williams had in his possession. The DOR petitioned the First Judicial District Court to determine the constitutionality of Montana's Dangerous Drug Tax. The court found the Drug Tax violated double jeopardy.

The DOR appeals these rulings and raises the following issues for our review:

1. Is Montana's Drug Tax a multiple punishment which violates double jeopardy?

2. Is Montana's Drug Tax Act unconstitutional on its face?

Both Sorenson and Williams pled guilty to possession of dangerous drugs and received sentences and fines under Montana's criminal code. Subsequently, the DOR assessed tax under Montana's Dangerous Drug Tax Act, §§ 15-25-101, MCA et seq. In both cases, the District Courts held Montana's Drug Tax violated double

2

jeopardy.

I

Is Montana's Drug Tax a multiple punishment which violates double jeopardy?

The Drug Tax clearly violates double jeopardy if it is a criminal penalty. Double jeopardy protects citizens from a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656.

Next, the Drug Tax may violate double jeopardy if it is an excessive civil sanction. United States v. Halper (1989), 490 U.S. 735, 109 S.Ct. 1892, 104 L.Ed.2d 487. In Halper, the Court stated that civil as well as criminal sanctions may constitute punishment and violate double jeopardy when the sanction, as applied to the individual, serves the goals of punishment rather than the remedial purposes of compensating the government for its loss. Halper at 448, 109 S.Ct. at 1901-1902, 104 L.Ed.2d at 501-502.

The DOR contends that double jeopardy does not attach to Montana's Drug Tax because the tax is an excise tax for raising revenue, not a criminal penalty or civil sanction. Appellees contend Montana's Drug Tax is a criminal penalty, and thus, violates double jeopardy.

In United States v. Ward (1980), 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742, the Court held that a federal fine imposed for failure to notify officials of an oil spill was a civil sanction, not a criminal penalty, and did not violate double jeopardy. First, the Court determined that Congress intended to establish a

3

civil penalty. Next, using criteria established in Kennedy v. Mendosa (1963), 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, it determined that the penalty was not so punitive in purpose or effect that the civil remedy was transformed into a criminal penalty. The Kennedy factors include whether the sanction: involves an affirmative disability or restraint, has historically been regarded as a punishment, requires a finding of scienter, promotes retribution and deterrence, applies to criminal behavior, has an alternate purpose, and is excessive in relation to the alternate purpose. Kennedy at 168-169, 83 S.Ct. at 567-568, 9 L.Ed.2d at 661.

The Supreme Court in Ward determined that Congress intended to establish a civil penalty. Ward at 250-251, 100 S.Ct. at 2642, 65 L.Ed.2d at 750-751. Similarly, here the Montana Legislature clearly intended to create a tax not a criminal sanction. In Chapter 563, Montana Session Laws 1987, the following descriptive paragraphs precede the wording of the "Dangerous Drug Tax Act" itself:

> WHEREAS, dangerous drugs are commodities having considerable value, and the existence in Montana of a large and profitable dangerous drug industry and expensive trade in dangerous drugs is irrefutable; and

> WHEREAS, the state does not endorse the manufacturing of or trading in dangerous drugs and does not consider the use of such drugs to be acceptable, but it recognizes the economic impact upon the state of the manufacturing and selling of dangerous drugs; and

> WHEREAS, it is appropriate that some of the revenue generated by this tax be devoted to continuing investigative efforts directed toward the identification, arrest, and prosecution of individuals involved in conducting illegal continuing criminal enterprises that affect the distribution of dangerous drugs in Montana.

> THEREFORE, the Legislature of the State of Montana

4

> does not wish to give credence to the notion that the manufacturing, selling, and use of dangerous drugs is legal or otherwise proper, but finds it appropriate in view of the economic impact of such drugs to tax those who profit from drug-related offenses and to dispose of the tax proceeds through providing additional anticrime initiatives without burdening law abiding taxpayers.

The intention of the Montana Legislature to enact a revenue producing tax on drugs is clear. Thus, we conclude Montana's Dangerous Drug Tax Act satisfies the first tier of the Ward analysis.

Next, we analyze the tax under the Kennedy factors to determine whether the tax is so punitive in either purpose or effect as to negate the intention to create a tax. First, the tax does not impose any affirmative disability or restraint upon the taxpayer. The taxpayer is required to pay an assessment based on the quantity of drugs in his possession, and is not subject to incarceration or any other restraint of his liberty or privileges.

Next, the tax has a remedial purpose other than promoting retribution and deterrence. Section 15-25-122, MCA, earmarks the use of the tax funds collected to defray the costs of drug abuse. The tax collected is used for such things as youth evaluations, chemical aftercare, chemical abuse assessments and juvenile detention facilities. The tax collected is based on the quantity of drugs possessed or stored by the taxpayer, and is not excessive in relation to the remedial purposes addressed in § 15-25-122, MCA.

Next, several state courts as well as federal courts have upheld the legitimacy of a tax on the transfer or possession of dangerous drugs. In United States v. Sanchez (1950), 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed 47, the Court determined that taxes on illegal activities are not necessarily penal or unconstitutional.

5

"A tax does not cease to be valid merely because it regulates, discourages or deters the activities taxed, even though the revenue raised by the tax is negligible." Sanchez at 44, 71 S.Ct. at 110, 95 L.Ed. 49. Similarly, in State v. Berberich (Kan. 1991), 811 P.2d 1192, and Harris v. State, Department of Revenue (Fla.App. 1 Dist. 1990), 563 So.2d 97, both courts upheld the validity of their state marijuana taxes as legitimate exercises of taxing power, not improper penalties or fines. Thus, we conclude a tax on dangerous drugs has not been historically regarded as a punishment.

Finally, the tax is based on possession and storage of dangerous drugs. Where possession gives rise to the tax, we conclude that the Act does not involve a finding of scienter.

Respondents argue that the scienter factor is not material where the crime, criminal possession of dangerous drugs under Title 45, MCA, similarly requires no scienter. Respondents claim double jeopardy is violated under the Act because the taxpayer is subject to both a criminal penalty and a tax for the same conduct. We disagree.

In Helvering v. Mitchell (1938), 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922, the Court allowed both a civil and criminal penalty for the same act or omission. It held that double jeopardy did not attach to a tax fraud penalty where Congress had created a civil procedure for collecting the penalty and the amount of the penalty was remedial. Helvering at 401-404, 58 S.Ct. 634-636, 82 L.Ed. 923-925. Here, as in Helvering, the tax is remedial and collected through a separate administrative procedure. Thus, although the conduct of possessing dangerous drugs subjects the taxpayers to both a criminal penalty and a tax, we conclude

6

that it is not so punitive in purpose or effect that it negates the legislative intent to create a civil sanction.

Williams contends Montana's Dangerous Drug Tax is derived from the taxpayer's criminal conviction. Thus, it is a criminal penalty and violates double jeopardy. Williams emphasizes that the tax is not imposed on persons in legal possession of drugs. Next he points out the tax may be collected as part of the fine imposed in a criminal conviction, or recovered from forfeited property. Finally, unlike other compliance based tax reporting, Title 15, MCA, does not provide for taxpayer compliance prior to arrest. Rather, under § 15-25-113, MCA, law enforcement officers are required to report to the DOR the names of persons subject to the tax. We do not find merit in these contentions.

Here, the assessment of the drug tax does not rest on a criminal conviction. As previously discussed, both civil and criminal penalties may attach to the same act or omission. Helvering, 303 U.S. 399, 58 S.Ct. at 633, 82 L.Ed. 922. Further, we do not conclude that the method of reporting the tax due on the possession of dangerous drugs or the method of collecting the amount of tax authorized by statute or administrative rules transforms this tax into a criminal penalty.

We conclude Montana's Dangerous Drug Tax is not derived from a criminal conviction.

Both respondents contend Montana's Dangerous Drug Tax is a criminal penalty. However, in the alternative, if this Court finds the tax is not a criminal penalty, they contend it violates double jeopardy under Halper. In Halper the Court held that a civil sanction violates double jeopardy when it serves the goals of

7

punishment rather than the remedial purposes of compensating the government for its loss. Halper 490 U.S. at 448, 109 S.Ct. 1901-1902, 104 L.Ed.2d at 501-502. In that case, Halper, a medical service manager submitted sixty-five inflated claims to medicare demanding a $12 payment on each claim, when the company was actually entitled to $3 per claim. Halper received a $2000 penalty for each false claim totalling $130,000. The Court concluded that the tremendous disparity between the government's damages of $585 and the civil penalty of $130,000 served the goals of punishment and violated double jeopardy. Halper, 490 U.S. at 452, 109 S.Ct. at 1904, 104 L.Ed.2d at 504.

We do not find Halper controlling. The court in Halper limited its ruling to similar cases. It stated: "What we announce now is a rule for the rare case, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." Halper at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. Halper involved a civil sanction and a fixed penalty per offense which was not based on remedial costs. As mentioned, the penalty was $2000 for each event regardless of how small the dollar amount was in terms of cost to the government. In contrast, the Montana Dangerous Drug Tax is an excise tax based on the quantity of drugs in the taxpayer's possession.

We note that both District Courts held the tax was excessive and punitive, not remedial, because the DOR failed to provide a summation of the costs of prosecution and societal costs of drug use. However, unlike the civil sanction in Halper where such proof may be required, a tax requires no proof of remedial costs on the

8

part of the state. Commonwealth Edison Co. v. State of Montana (1980), 189 Mont. 191, 615 P.2d 847. In Commonwealth this Court held that the state is not required to defend the validity of an excise tax by offering a summation of the costs of governmental benefits. Commonwealth, 189 Mont. at 207, 615 P.2d at 855-856.

Finally, respondents contend the tax was excessive. Sorenson was assessed a tax of $200 per gram, or $4,216 for his possession of 21.08 grams of cocaine. Similarly, Williams was assessed a tax of $100 per ounce, or $1,260 for his possession of 12.6 ounces of marijuana. We do not conclude that this tax is excessive. It is neither a fixed penalty as in Halper, nor is the amount of tax so grossly disproportionate as to transform this tax into a criminal penalty which violates double jeopardy. We also note that the foregoing rates of tax on various drugs are comparable to those in other states and also comparable to the amounts in effect for many years during the effective period of the Federal Drug Tax Act which has now been repealed.

We hold that Montana's Dangerous Drug Tax is not a multiple punishment and does not violates double jeopardy.

II

Is Montana's Drug Tax Act unconstitutional on its face?

The court in Williams held that Montana's Dangerous Drug Tax Act, on its face, violated the double jeopardy clause of the Fifth Amendment to the United States Constitution. We disagree. As stated previously, the tax is not a criminal penalty and does not rest on a criminal conviction. Further, under the Halper analysis the tax does not serve the goals of punishment. Neither is the tax excessive or grossly disproportionate to the harm suffered by the

9

government. Finally, the reporting procedures outlined in § 15-25-113, MCA, do not relate the tax to a criminal conviction. Rather, they protect the taxpayer's Fifth Amendment right against self-incrimination.

We hold Montana's Dangerous Drug Tax Act is constitutional on its face.

Reversed.

_____
                                                                    Justice

We Concur:

_____
                Chief Justice

_____

_____

_____

_____
                Justices

10

Justice William E. Hunt, Sr., dissenting.

I dissent. Once again the majority uses the club of the "drug crisis" to crack the shield of the Bill of Rights. Montana's Drug Tax Act clearly violates a constitutional right against double jeopardy through the use of multiple punishments.

As the United States Supreme Court stated in Halper, the labels of "criminal" and "civil" are not of "paramount importance." United States v. Halper (1989), 490 U.S. 438, 447, 109 S. Ct. 1892, 1901, 104 L. Ed. 2d 487, 501. To determine whether a civil penalty amounts to a criminal penalty "requires a particular assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." Halper, 490 U.S. at 448.

In Halper, the United States Supreme Court held that:

> [U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not be fairly characterized as remedial, but only as a deterrent or retribution.

Halper, 490 U.S. at 448-49. Both Williams and Sorenson were previously convicted and punished before the DOR assessed the tax. Clearly, the facts of this case fit the mandate of Halper because the Montana Drug Tax is a civil sanction which violates double jeopardy by serving the goals of punishment rather than the remedial purpose of compensating the government for its loss.

Not only does the tax serve the goals of punishment, it fails to bear any rational relationship to the goal of restoring to the State its losses incurred when enforcing its drug laws,

11

particularly when considering the excessive criminal fines imposed by § 45-9-101 through -127, MCA. In addition, the DOR failed to provide any evidence which would establish the societal cost of prosecuting these cases. Indeed, the majority bestows upon the DOR an unfettered license to impose an arbitrary, unequal, and unfair tax.

Although there is evidence that the legislature intended to create a civil penalty, the purpose and effect of the statute is still punishment and deterrence. The Montana Drug Tax Act has previously been litigated in the federal system. As United States Bankruptcy Court Judge for the District of Montana, John L. Peterson, ruled:

> The punitive nature of the tax is evident here, because drug tax laws have historically been regarded as penal in nature, the Montana Act promotes the traditional aims of punishment -- retribution and deterrence, the tax applies to behavior which is already a crime, the tax allows for sanctions by restraint of Debtors' property, the tax requires a finding of illegal possession of dangerous drugs and therefore a finding of scienter, the tax will promote elimination of illegal drug possession, and the tax appears excessive in relation to the alternate purpose assigned, especially in the absence of any record developed by the State as to societal costs. Finally, the tax follows arrest for possession of illegal drugs and the tax report is made by law enforcement officers, not the taxpayer, who may or may not sign the report. All these aspects of the Drug Tax Act lead to the inescapable conclusion that it has deterrence and punishment as its purpose.

Drummond, Trustee et al. v. Department of Revenue (1990), 8 MBR 288. The Federal District Court affirmed the holding and reasoning of Judge Peterson. In re Kurth Ranch (D. Mont. April 23, 1991), No. CV-90-084-GF.

12

The majority attempts to hide behind the veil of facts of these cases to justify that the tax imposed is reasonable and not excessive. In Judge Peterson's case, the DOR attempted to impose a tax assessment in excess of $800,000 on the bankrupt estate of the Kurths. The DOR levied a tax on drugs that were not even defined in the statute. Nor did the DOR provide any rational explanation regarding how it determined the value of the drugs seized. Judge Peterson correctly found that tax to be so grossly disproportionate as to transform it into a criminal penalty. He recognized quite clearly, as did State District Court Judge John S. Henson in Sorenson, State District Court Judge Jeffrey D. Sherlock, in Williams, and Federal District Court Judge Paul G. Hatfield, in affirming Judge Peterson, that a criminal penalty by any other name is still a criminal penalty.

For these reasons I would hold that the Montana Drug Tax Act is unconstitutional on its face and would affirm the lower court's decision.

_____
Justice

Justice Terry N. Trieweiler concurs in the foregoing dissent of Justice William E. Hunt, Sr.

_____
Justice

13

July 21, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


R. Bruce McGinnis
Dept. of Revenue
Mitchell Bldg.
Helena, MT  59620

Clinton H. Kammerer
Kammerer Law Offices
101 E. Broadway, Ste. 200
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy

July 21, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


PAUL VAN TRICHT, Tax Counsel
Department of Revenue
Office of Legal Affairs
Mitchell Building
Helena, MT 59620

Edmund F. Sheehy
CANNON & SHEEHY
P.O. Box 5717
Helena, MT 59604

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy