**Marlon Henry HILL, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–94–0207.**

Court of Criminal Appeals of Oklahoma.

May 19, 1995.

158

Danny L. Lohmann, Asst. Appellate Indigent Defender, Norman, for appellant on appeal.

Stacy Smith, Asst. Dist. Atty., Oklahoma City, for appellee at trial.

Susan Brimer Loving, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

*OPINION*

STRUBHAR, Judge:

Appellant, Marlon Henry Hill, was tried by jury in the District Court of Oklahoma County, Case Number CF–92–6005, before the Honorable James B. Blevins, District Judge. Appellant was convicted of Count II—Possession of a Firearm While Committing a Felony (21 O.S.1991, § 1287) and Count III—Possession of a Controlled Dangerous Substance Without a Tax Stamp Attached Thereto (68 O.S.1991, § 450.3).[1] The jury recommended sentences of two (2) years imprisonment and five (5) years imprisonment respectively. The trial court ordered the sentences run consecutively and sentenced Appellant accordingly.

Appellant presents two novel issues to this Court. Appellant also presents two issues

1. Appellant was charged with Count I—Trafficking in Illegal Drugs (63 O.S. 1991, § 2–415) but acquitted.

which we find warrant clarification. We choose to publish this opinion to address these issues and to provide guidance.

On September 21, 1992, Trooper Jerry Treadwell stopped a two-door car driven by Marlon Galbreath for speeding on Interstate Highway 240. Appellant was a passenger in the car. When Treadwell turned on his emergency signals Galbreath took longer than was necessary to pull over. While following the car Treadwell noticed the driver and passenger were moving around. Galbreath pulled over on the bridge above Western Avenue. Treadwell asked him for identification and then placed him in the trooper car to write a citation. Treadwell noticed Galbreath was extremely nervous and obtained Galbreath's consent to search the car.

Treadwell approached Appellant and requested he exit the car. Appellant complied and stood at the front of the car while Treadwell searched it. Treadwell found a package with rock cocaine, a bag with a loaded gun and scales with powder on them behind the driver's seat. He also found a large amount of loose money in the glove box. Treadwell told Appellant to stay where he was and returned to arrest Galbreath. He notified Galbreath he was being arrested for drug and firearm violations and prepared to handcuff him. However, Galbreath broke free and ran off the bridge away from Treadwell. Appellant then attempted to jump off the bridge. Seeing he was too high up to safely drop to the ground Appellant climbed back onto the bridge and followed Galbreath. Appellant was detained by citizens and arrested by police shortly thereafter.

Before chasing Appellant and Galbreath, Treadwell collected the cocaine, gun, scales and money and secured them in his car. After Appellant was caught Treadwell returned to Galbreath's car with Charles Roberts, a drug dog handler for the Oklahoma Bureau of Narcotics. Treadwell then replaced the cocaine, gun and money in Galbreath's car. Roberts ran his dog through Galbreath's car and detected the presence of illegal drugs on the driver's door, behind the driver's seat and in the glove box. Galbreath's car was then towed to the trooper station.

At the station another sniff search was conducted. The dog "hit" on the driver's door, behind the driver's seat and the glove box but ignored the passenger's door. Troopers then took the money out of the glove box and hid it in the station garage. They also took Appellant's money and hid it separately. The drug dog hit on both groups of bills. None of the troopers wore gloves when handling the items taken from Galbreath's car and at least three troopers handled the items prior to the last sniff search.

Appellant testified at trial and denied any knowledge of the cocaine or the gun. He claimed he went to his cousin's house after a fight with his girlfriend where he met Galbreath and accepted a ride so he could cool off. He said he slept in the car until Galbreath woke him to say they were being pulled over. He claimed he had no idea why Treadwell was arresting Galbreath and that he ran from the scene out of fear he would be arrested for something he did not do.

In his first proposition of error Appellant claims the Oklahoma Controlled Dangerous Substance Tax Act, 68 O.S.1991, §§ 450.1–450.9 (hereinafter Act) is unenforceable because the Oklahoma Tax Commission (hereinafter Commission) has not promulgated rules providing for the purchase of stamps. He argues it is impossible to comply with rules which do not exist and therefore it is impossible to be convicted of a crime which punishes noncompliance.

We have found no Oklahoma cases on this issue. However, this precise issue was recently addressed in *Bass v. State*, 830 S.W.2d 142 (Tex.App.–Houston [14th Dist.] 1992, pet. ref'd.). In *Bass* the defendant claimed no rules existed providing for purchase of drug tax stamps. He argued he could not be punished for not affixing stamps when it was impossible to purchase stamps. The defendant presented no evidence the rules did not exist arguing the burden to prove such rules existed was on the state. The court rejected his argument noting the defendant had the burden to provide evidence to support his claim. The court presumed, in the absence of evidence to the contrary, the commission acted in accordance with the legislative man-

date of the drug tax stamp act and promulgated the necessary rules. *Id.* at 148.

This Court finds *Bass* persuasive on this issue. In Oklahoma a defendant bears the burden to provide a sufficient record upon which this Court may determine the issue raised. *Simpson v. State*, 876 P.2d 690, 701 (Okl.Cr.1994); *Boyd v. State*, 743 P.2d 674, 676 (Okl.Cr.1987). Failure to provide an adequate record waives review of the error. *Id.* In the present case Appellant fails to present *any* record to support his proposition. The only evidence Appellant cites this Court is two affidavits, appended to his brief, purporting to show the Commission has not promulgated any rules to make possible the purchase of drug tax stamps. Pursuant to this Court's order of September 20, 1994,[2] these two affidavits were specifically removed from the record and appellate counsel has failed to supplement the record with the affidavits. By failing to supplement the record appellate counsel precluded review of this argument. This Court may take judicial notice of promulgated rules of the Commission. 12 O.S.1991, § 2201(B)(1). However, in the absence of any evidence the Commission has *not* promulgated rules we presume the Commission, as the agency designated to adopt rules for the provision of stamps and collection of the tax, has followed the legislative mandate in 68 O.S.1991, § 450.4, and has promulgated the necessary rules.

In his second proposition of error Appellant contends the Act is unconstitutional. He argues the Act: (1) violates his right against self incrimination; (2) impermissibly forces him to forfeit one constitutional right in order to exercise another; (3) violates the prohibition against double jeopardy in both the United States and Oklahoma Constitutions; and (4) is a pretext to increase punishment on drug offenses rather than raise revenue.

Appellant's first two arguments were recently addressed in *White v. State*, — P.2d —, 66 OBJ 1143 (Okl.Cr. April 1, 1995), *reh'g denied*, — P.2d —, 66 OBJ 1249 (Okl.Cr. April 8, 1995). *White* rejects identical arguments and is dispositive of Appellant's first two arguments.

Appellant's third argument is moot. Because he was not convicted of trafficking in addition to the tax stamp violation Appellant fails to show he was punished twice for the same act. Despite his claim that convictions for both trafficking and a tax stamp violation are unconstitutional he lacks standing to challenge the constitutionality of the act on double jeopardy grounds. *See Rakas v. Illinois*, 439 U.S. 128, 139–140, 99 S.Ct. 421, 428–429, 58 L.Ed.2d 387, 398–399 (1978); *Boyd v. State*, 839 P.2d 1363, 1370–1371 (Okl. Cr.1992), *cert. denied*, — U.S. —, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993); *Little v. State*, 725 P.2d 606, 608 (Okl.Cr.1986).

Appellant's final constitutional argument presents a novel issue to this Court. However, while the issue is novel to Oklahoma, Appellant's argument was effectively rejected by the United States Supreme Court in *United States v. Sanchez*, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950). In *Sanchez* the Court reviewed the constitutionality of a federal tax on marijuana noting "despite the [act's] regulatory effect and the close resemblance to a penalty, it does not follow that the levy is invalid." The Court stated the fact a tax "regulates, discourages, or even definitely deters the activities taxed," does not render it invalid even when the revenue obtained is negligible or the revenue purpose is secondary. The Court then held the "tax in question is a legitimate exercise of the taxing power despite its collateral regulatory purposes and effect." The Court further noted levy of the tax was not conditioned on commission of a crime, Congress provided a civil procedure for tax collection and the severity of the penalty for not paying the tax did not alter the civil character of the tax. *Id.* at 44–45, 71 S.Ct. at 110, 95 L.Ed. at 49–50.

In our review of the Act we must determine whether the nominally civil Act actually imposes a criminal sanction. *United States v. Ward*, 448 U.S. 242, 248–249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749 (1980). First, we must determine whether the legis-

---

**2.** Order Vacating April 29, 1994, Order Granting Appellant's Motion to Cross–Reference and Granting in Part and Denying in Part Appellee's Motion to Strike Exhibits.

lature expressly or impliedly indicated a preference for a civil or criminal label. Second, we must determine whether, despite an intent for civil penalty, the statutory scheme is so punitive in purpose or effect as to negate this intention. With regard to the second inquiry only the "clearest proof" will suffice to establish a nominally civil statute has punitive purpose or effect. *Id.*

■ In the present case the legislature expressly intended a civil label for the Act. The Act is titled a tax,[3] it is designed to raise and distribute revenue for drug abuse education programs,[4] is codified in Title 68 and provides a civil procedure for collection of taxes and penalties.[5] In analyzing the Act under the second prong of *Ward* we will consider the factors set forth in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644, 661 (1963). These factors include whether sanctions under the Act: involve an affirmative disability or restraint; have historically been regarded as a punishment; come into play only on a finding of *scienter;* promote the traditional aims of punishment—retribution and deterrence; apply to behavior which is already a crime; have an alternative purpose which may rationally be assignable for it; or appear excessive in relation to the alternative purpose assigned. Absent conclusive evidence the legislature intended the Act to be a penal statute this Court must consider the above factors in relation to the Act on its face. *Id.*

■ Appellant fails to present the "clearest proof" the Act has a punitive effect. He likewise fails to present conclusive evidence the legislature intended the Act to be a penal statute. Collection of the tax does not impose an affirmative disability or restraint upon dealers. *Compare to Mendoza–Martinez,* 372 U.S. at 182, 83 S.Ct. at 574–575, 9 L.Ed.2d at 669 (holding statute which auto-matically divested persons who fled the country to avoid the draft of their citizenship penal in nature). Taxes and penalties are traditionally regarded as a form of civil relief. *See Ward,* 448 U.S. at 256, 100 S.Ct. at 2645, 65 L.Ed.2d at 754 (Blackmun, J. concurring, joined by Marshall, J.). Liability under the Act does not require *scienter* but is absolute. 68 O.S. 1991, § 450.8. The Act clearly applies to criminal behavior and promotes retribution and deterrence. 68 O.S. 1991, §§ 450.1, 450.3, 450.6. However, the Act also clearly serves a purpose other than deterring the possession or transfer of controlled dangerous substances. It serves a remedial purpose in providing revenue for drug abuse education. 68 O.S. 1991, § 450.7. Moreover, while the tax is substantial it is not excessive in relation to the costs to society of drug abuse nor in relation to the Act's remedial purpose of preventing drug abuse through education. As noted by the Court in *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 1946–1947, 128 L.Ed.2d 767, 779–780 (1994), high tax rates and deterrent purposes do not necessarily render the purpose of a drug tax punitive rather than revenue raising.[6] Nor does the likelihood the tax will not be paid, thereby making penalties likely, in itself make the Act a pretext to inflict additional punishment. *See Sanchez,* 340 U.S. at 44–45, 71 S.Ct. at 110, 95 L.Ed. at 49–50 (noting penalty, severe in relation to täx, did not alter civil character of act where based on presumption tax would not realistically be paid). Finally, Appellant's reliance on *United States v. Dalton,* 960 F.2d 121 (10th Cir. 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 253, 126 L.Ed.2d 205 (1993), is misplaced. The Tenth Circuit held the defendant could not be convicted of possessing an unregistered machine gun when it was impossible to register the gun. *Id.* at 124–125. The court noted that, because the gun in question could

---

**3.** 68 O.S. 1991, § 450.1, Historical and Statutory Notes.

**4.** 68 O.S. 1991, §§ 450.2, 450.3(B), 450.7.

**5.** 68 O.S. 1991, §§ 450.3–450.5, 450.8.

**6.** *As an example the Court cited the "steep $100.00–per-ounce federal tax on marijuana" in Sanchez.* Oklahoma's penalty by comparison is $198.46–per ounce ($3.50 per gram) on marijuana. 68 O.S. 1991, §§ 450.2(1), 450.8(A). The penalty on crack, including the civil penalty for nonpayment of the tax, is $200.00–per-gram 68 O.S. 1991, §§ 450.2(2), 450.8(A), or quadruple the value of the crack seized in the present case.

no longer be registered and because registration was solely a means to facilitate tax collection, the constitutional basis of the tax had disappeared thereby foreclosing punishment for not registering the gun. *Id.* at 125. Such is not the case here.

■ Applying the analyses under *Ward* and *Mendoza–Martinez* we conclude the statutory scheme of the Act is not so punitive in purpose or effect as to negate its civil intent. We further find *Sanchez* controlling and hold the Act is not a mere pretext to inflict additional criminal punishment for possession or transfer of controlled dangerous substances. Other jurisdictions have likewise upheld the legitimacy of drug tax acts.[7]

In his third proposition of error Appellant contends submission of Instruction No. 11 on the issue of flight is reversible error. He argues the flight instruction is per se reversible error under *Mitchell v. State*, 876 P.2d 682 (Okl.Cr.1993). He further argues improper wording of the instruction impermissibly altered the State's burden of proof. He finally argues omission of the third paragraph of Oklahoma Uniform Jury Instruction–Criminal 806 (OUJI–CR 806) necessitates reversal.

■ Appellant contends the instruction as a whole impermissibly alters the burden of proof by creating an inference of guilt and that the inclusion of the words "or innocence" in the last paragraph impermissibly instructs the jury to determine his innocence. The instruction given mirrors OUJI–CR 806, absent the third paragraph.[8] As this Court noted in *Mitchell*, 876 P.2d at 685, OUJI–CR 806 impermissibly shifts the burden of proof only when a defendant claims he was not present at the crime and hence could not have departed. *See also McCormick v.*

7. See *State v. Gallup*, 500 N.W.2d 437, 444 (Iowa 1993); *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448, 456 (1993) *Hyatt v. State Dept. of Revenue*, 597 So.2d 716, 718–719 (Ala.Civ.App.1992); *Rehg v. Illinois Dept. of Revenue*, 152 Ill.2d 504, 178 Ill.Dec. 731, 736–737, 605 N.E.2d 525, 530–531 (1992); *Sorensen v. State*, 254 Mont. 61, 836 P.2d 29, 33 (1992); *Lopez v. State*, 837 S.W.2d 863, 866 (Tex.App.–Houston [1st Dist.] 1992); *State v. Berberich*, 248 Kan. 854, 811 P.2d 1192, 1201–1202 (1991); *Harris v. State Dept. of Revenue*, 563 So.2d 97, 99 (Fla.App. 1 Dist.1990), *overruled in part on other grounds in Florida Dept. of Revenue v. Herre*, 634 So.2d 618 (Fla. 1994). *But see State v. Roberts*, 384 N.W.2d 688 (S.D.1986) (holding statute's tax purpose a pretext to applying an additional penalty for drug offenses); *Sims v. State Tax Comm'n*, 841 P.2d 6, 13–14 (Utah 1992) (holding assessment scheme and penalty too onerous to be legitimate revenue raising tool and violations of act quasi-criminal in nature); *N.M. Taxation & Revenue Dept. v. Whitener*, 117 N.M. 130, 134–135, 869 P.2d 829, 833–834 (Ct.App.1993) (holding tax assessment subsequent to criminal punishment, in absence of proof of costs to be recouped by State, punitive in nature).

8. OUJI–CR 806 reads in its entirety:

EVIDENCE HAS BEEN INTRODUCED OF THE DEFENDANT'S(S') [DEPARTURE] [CONCEALMENT] [ESCAPE OR ATTEMPT TO ESCAPE FROM CUSTODY] **SHORTLY AFTER THE ALLEGED CRIME WAS COMMITTED. YOU MUST FIRST DETERMINE WHETHER THIS ACTION BY THE DEFENDANT(S) CONSTITUTED FLIGHT.**

**THE TERM "FLIGHT," AS IT IS USED IN THIS INSTRUCTION, MEANS MORE THAN** DEPARTURE OR CONCEALMENT. **TO BE IN FLIGHT, A DEFENDANT MUST HAVE** [DEPARTED] [CONCEALED (HIMSELF) (HERSELF) (THEMSELVES)] [ESCAPED OR ATTEMPTED TO ESCAPE FROM CUSTODY] **WITH A CONSCIOUSNESS OF GUILT IN ORDER TO AVOID ARREST.**

[Note: Must be given where defendant has introduced evidence explaining his/her acts. THE DEFENDANT(S) (HAS) (HAVE) OFFERED EVIDENCE EXPLAINING (HIS) (HER) (THEIR) ACTS. YOU MUST CONSIDER THE CLAIM OF THE DEFENDANT(S) IN DETERMINING IF FLIGHT OCCURRED.]

**TO FIND THAT THE DEFENDANT WAS IN FLIGHT YOU MUST FIND BEYOND A REASONABLE DOUBT THAT:** *FIRST*, **THE DEFENDANT(S)** [DEPARTED] [CONCEALED (HIMSELF) (HERSELF) (THEMSELVES)] [ESCAPED OR ATTEMPTED TO ESCAPE FROM CUSTODY]; *SECOND*, **WITH A CONSCIOUSNESS OF GUILT;** *THIRD*, **IN ORDER TO AVOID ARREST FOR THE CRIME WITH WHICH HE/SHE IS CHARGED.**

**IF, AFTER A CONSIDERATION OF ALL THE EVIDENCE ON THIS ISSUE, YOU FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT(S) [WAS] [WERE] IN FLIGHT, THEN THIS FLIGHT IS A CIRCUMSTANCE WHICH YOU MAY CONSIDER WITH ALL THE OTHER EVIDENCE IN THE CASE IN DETERMINING THE QUESTION OF THE DEFENDANT'S(S') GUILT OR INNOCENCE. HOWEVER, IF YOU HAVE A REASONABLE DOUBT THAT DEFENDANT(S) [WAS] [WERE] IN FLIGHT, THEN THE FACT OF ANY [DEPARTURE] [CONCEALMENT] [ESCAPE OR ATTEMPTED ESCAPE] IS NOT A CIRCUMSTANCE FOR YOU TO CONSIDER.**

*State,* 845 P.2d 896, 899 (Okl.Cr.1993). When a defendant seeks to explain his departure from a crime scene the flight instruction is appropriate. *Mitchell,* 876 P.2d at 684 and cases cited therein. Moreover, *Mitchell's* mandate to eliminate the words "or innocence" from the last paragraph of OUJI–CR 806 is prospective in effect. *Cooper v. State,* 889 P.2d 293, 310 (Okl.Cr.1995); *Rivers v. State,* 889 P.2d 288, 292 (Okl.Cr.1994); *Mitchell,* 876 P.2d at 686. An appeal is commenced and pending upon filing of a defendant's notice of intent to appeal and designation of record. 22 O.S.1991, Ch. 18, App., *Rules of the Court of Criminal Appeals,* Rule 2.1(B). The present case was pending on July 23, 1993 (O.R. at 90, 91), prior to the decision in *Mitchell* on December 15, 1993. Appellant admitted his presence at the traffic stop (Tr. at 167), and testified regarding his departure from the scene. (Tr. at 178). Therefore, it was appropriate to give Instruction No. 11.

■■■ However, the omission of the third paragraph of OUJI–CR 806, instructing the jury it *must* consider Appellant's evidence explaining his departure, was error. *Paxton v. State,* 867 P.2d 1309, 1317–1318 (Okl.Cr.1993), *cert. denied* ── U.S. ──, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994). In light of our recent decisions addressing OUJI–CR 806 we take this opportunity to reaffirm our holding in *Paxton* on this issue. Defense counsel's failure to object to the instruction as given[9] or to submit an alternative instruction waives all but plain error. *Id.* Being statutory error the proper standard of review is whether the submission of the instruction creates "grave doubts" the error had a "substantial influence" on the outcome of the trial. *Simpson,* 876 P.2d at 702. We find dispositive *Paxton* wherein we stated:

"[T]he error did not determine the verdict as the jury was thoroughly instructed as to the weight to be given the [defendant's] testimony. Further, [the flight instruc-

tion] informed the jury that it must determine whether [defendant's] conduct in leaving the scene constituted flight, and that in doing so it must consider all the evidence presented at trial."

*Paxton,* 867 P.2d at 1317–1318.

While evidence of flight is vital to support the verdict, *see infra,* under the reasoning of *Paxton* the omission of the third paragraph in the flight instruction was cured by other instructions. Instruction No. 11 tells the jury to consider all the evidence presented on the issue of flight. Instruction Nos. 8, 9, 12, 14 and 22 thoroughly instruct the jury on the weight to be given the testimony of all the witnesses, including Appellant.[10] While the jury chose not to believe Appellant's reasons for leaving he fails to present any evidence the flawed flight instruction prevented the jury from considering his testimony.

In his fifth proposition Appellant claims prejudicial error resulted from the prosecutor's questioning of him about his withdrawn guilty plea and admission of the withdrawn plea into evidence. He argues the jury placed undue emphasis on the plea which resulted in prejudice to him. The State argues Appellant failed to preserve the issue for review and any error was harmless. Because of the enormous prejudicial effect which resulted from the trial court's action we take this opportunity to re-examine and reconfirm our longstanding prohibition against such evidence.

■■■ Even though the admission of State's Exhibit No. 8 (the withdrawn guilty plea), is clearly error under 12 O.S.1991, § 2410[11] this error was not properly preserved for appellate review. At trial defense counsel objected to the exhibit stating:

[T]his document was prepared under duress. I don't believe that Mr. Hill was properly represented when he signed this. The words were not his—they were dictat-

9. Defense counsel only objected that the evidence did not support submitting the issue of flight to the jury.

10. These instructions mirror OUJI–CR Nos. 801–803, 842, 904, 906–907 and 909.

11. *Fritz v. State,* 811 P.2d 1353, 1363 (Okl.Cr. 1991) (recognizing basic rule of inadmissibility of pleas under § 2410(A)(1) in analysis of admissibility of statements made pursuant to plea negotiations under § 2410(A)(4); *Perry v. State,* 84 Okla.Crim. 211, 231–232, 181 P.2d 280, 290 (1947).

ed to him by his attorney—and I think the State is trying to do nothing but inflame the jury by the admission of this document.

Defense counsel renewed his objection prior to admission of the exhibit.

■■■■ This Court has consistently held when a specific objection is made at trial no different objections will be considered on appeal. *Simpson*, 876 P.2d at 703; *Boyd*, 839 P.2d at 1368; *Armstrong v. State*, 811 P.2d 593, 599 (Okl.Cr.1991). By failing to object at trial that the exhibit was inadmissible under § 2410 Appellant did not properly preserve this issue on appeal. *See Rowe v. State*, 779 P.2d 594, 595 (Okl.Cr.1989) (objecting to admission of confession on grounds other than voluntariness of confession waived review of voluntariness); *Patterson v. State*, 735 P.2d 338, 341 (Okl.Cr.1987) (objecting to admission of written statement as irrelevant waived claim of hearsay on appeal). Having waived the issue, this Court can only review it for plain error. *Wilson v. State*, 871 P.2d 46, 48 (Okl.Cr.1994); *Brown v. State*, 871 P.2d 56, 67 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994). A trial court's decision to admit evidence will not be disturbed absent a clear showing of abuse of discretion accompanied by prejudice. *Dennis v. State*, 879 P.2d 1227, 1232 (Okl.Cr.1994); *Romano v. State*, 847 P.2d 368, 381 (Okl.Cr.1993), *aff'd*, —— U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). Therefore, we must answer a twofold question: (1) did the trial court abuse its discretion?; and (2) if yes, did this abuse create "grave doubts" the error had a "substantial influence" on the outcome of the trial? We answer both questions affirmatively.

■■■ The case law is clear a withdrawn guilty plea is inadmissible in a defendant's trial on the charges contained in the plea. *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583–584, 71 L.Ed. 1009, 1012 (1927); *Glass v. State*, 361 P.2d 230, 239 (Okl.Cr.1961) (distinguishing instant case

from cases where withdrawn guilty plea used as evidence against a defendant on trial for same charges); *Frantz v. State*, 70 Okl.Cr. 214, 105 P.2d 561, 566 (1940). *See also Hutto v. Ross*, 429 U.S. 28, 30 n. 3, 97 S.Ct. 202, 203 n. 3, 50 L.Ed.2d 194, 197 n. 3 (1976) (noting the issue of admissibility of withdrawn guilty pleas was settled in *Kercheval*). Moreover, § 2410 cannot be more clear that admission of a withdrawn guilty plea or questioning about the plea is forbidden.[12]

■■■ In the present case the prosecutor gave no reason for offering Appellant's withdrawn guilty plea or questioning Appellant about it. It appears the only reason the prosecutor used Exhibit No. 8 was to impeach Appellant's testimony that he did not know of the contraband. Further, the trial court did not state any reason for admitting the exhibit other than the withdrawn guilty plea had been entered into voluntarily and knowingly. Finally, the record clearly shows both the prosecutor and the trial court were aware proscriptions are placed on the use of withdrawn guilty pleas. When defense counsel attempted to ask Appellant why he entered into the plea agreement the prosecutor objected on the grounds that statements made pursuant to plea negotiations were inadmissible. The trial court sustained the objection. Given the clear and unambiguous state of the law, the absence of any reason for admission of the plea and the trial court's awareness of the statutory proscriptions placed on such documents we find the trial court abused its discretion in admitting Appellant's withdrawn guilty plea.

The prejudicial effect of such evidence is clear. As the Supreme Court noted in *Kercheval*, 274 U.S. at 223, 47 S.Ct. at 583, 71 L.Ed. at 1012:

The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled

12. Section 2410 reads in pertinent part:
  A. Except as otherwise provided in this section evidence of the following is not, in any civil or criminal proceeding, admissible against the

defendant who made the plea or was a participant in the plea discussions:
  1. a plea of guilty which was later withdrawn[.]

it ceased to be evidence. By permitting it to be given weight the court reinstated it pro tanto. (citation omitted) The conflict was not avoided by the court's charge. Giving to the withdrawn plea any weight is in principle quite as inconsistent with [permitting its withdrawal ] as it would be to hold the plea conclusive. Under the charge, if the plea was found not improperly obtained, the jury was required to give it weight unless petitioner was shown to be innocent. And, if admissible at all, such plea inevitably must be so considered. As a practical matter, [the withdrawn guilty plea] could not be received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court [allowing him to withdraw his guilty plea.] 'The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty.' (citation omitted).

This Court in *Frantz*, 105 P.2d at 566 stated:

It seems to us that ... to permit to be introduced in evidence a plea of guilty ... would not only be prejudicial, but would be unreasonable.

*See also Matter of McConnel*, 886 P.2d 471, 474–475 (Okl.1994) (holding admission of plea negotiations and surrounding statements not error in disciplinary hearing because admission "did not thwart the worthy purpose of Section 2410 [of encouraging] compromise in a criminal proceeding.").[13]

■ There is perhaps no clearer case of the prejudice which can result from the erroneous introduction of a withdrawn guilty plea than the present case. The jury clearly placed much emphasis on the withdrawn guilty plea and the circumstances attendant to its making. The plea was admitted into evidence, published to the jury and taken into deliberations. The guilty plea and surrounding circumstances were thoroughly covered during Appellant's testimony. When Appellant stated he did not tell the truth on the guilty plea the prosecutor implied he was committing perjury. The prosecutor emphasized the withdrawn guilty plea in closing argument. During the course of deliberations the jury asked the trial court four questions, all of which pertained to the guilty plea.[14] The record does not reveal when deliberations began or when the questions were submitted to the trial court, but the jury had to recess for the night and return the final day of trial to continue deliberations. The jury was instructed Appellant must have knowledge of and intent to possess the drugs to be convicted of trafficking. The jury obviously found these elements present, *see infra*, but still chose to acquit Appellant of trafficking. It can be reasonably inferred the jury found the evidence otherwise insufficient but Appellant's admission of guilt on the plea tipped the scale toward guilt on the tax stamp and firearm charges. Given the dearth of evidence supporting the verdicts, *see infra*, the amount of testimony about Exhibit No. 8, the prosecutor's statements regarding the document and the jury's great interest in it we find admission of and questioning about the withdrawn guilty plea creates "grave doubts" it had a

---

13. Our research discloses four cases in which admission of evidence of a withdrawn guilty plea or plea of nolo contendere was harmless error. *See Security Nat. Bank of Sapulpa v. Hufford*, 754 P.2d 561, 565 (Okl.App.1987) (holding nolo plea properly admitted to impeach defendant in civil trial unrelated to prior criminal trial); *Cummings v. State*, 578 P.2d 377, 379 (Okl.Cr.1978) (holding harmless admission of guilty plea on other charges where defendant admitted crime on direct testimony); *Louder v. State*, 568 P.2d 344, 349 (Okl.Cr.1977) (holding harmless admission of guilty plea to enhance punishment where two other judgments and sentences were properly admitted); *Glass*, 361 P.2d at 239–240 (holding defendant's tactical decision to enter plea, withdraw and re-enter plea with different judge

to receive lighter sentence, in addition to defense counsel opening questioning to argue former jeopardy and pursuing subject with fervor, rendered admission harmless).

14. The jury asked:

1. Were there any objections to State's exhibit # 8 being admitted by the defense?
2. Why is he able to retract his signed statement and have a trial?
3. Did said defendant have a video preliminary hearing?
4. Why did he waive his preliminary hearing?

The trial court gave the same response to all four questions, "[t]hat is not for you to consider."

"substantial influence" on the outcome of the trial.

Appellant finally challenges the sufficiency of the evidence. Appellant contends: (1) there is insufficient evidence to prove possession of either the cocaine or the gun; (2) there is insufficient evidence to prove a nexus between the tax stamp violation and use of the gun; and (3) the State failed to exclude every reasonable hypothesis except his guilt.

■■■ In this case there is no direct evidence of Appellant's knowledge or possession of the cocaine or the gun. The State concedes the only evidence against Appellant is circumstantial. When the only evidence supporting a conviction is circumstantial the evidence must exclude every reasonable hypothesis except that of guilt. *Romano*, 847 P.2d at 378; *Woodruff v. State*, 846 P.2d 1124, 1133 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993); *Billey v. State*, 800 P.2d 741, 743 (Okl.Cr.1990). Lacking any direct evidence Appellant actually possessed either the cocaine or the gun, the State must prove he constructively possessed each. Constructive possession can be established through circumstantial evidence proving a defendant knows of the presence of drugs or weapons and has the power and intent to control their disposition or use. *See Pebworth v. State*, 855 P.2d 605, 607 (Okl.Cr.1993); *Carolina v. State*, 839 P.2d 663, 665 (Okl.Cr.1992); *Howard v. State*, 815 P.2d 679, 683 (Okl.Cr.1991); *Doyle v. State*, 759 P.2d 223, 224–225 (Okl.Cr. 1988) (holding a link between drugs and defendant, or other circumstances in addition to his presence in the car, can show the necessary knowledge and possession). A defendant's knowledge and intent can be proved by circumstantial evidence. *See Billey*, 800 P.2d at 743; *Morrison v. State*, 792 P.2d 1189, 1192–1193 (Okl.Cr.1990). Therefore, to support the present convictions the State must present sufficient evidence to prove, to the exclusion of every other reasonable hypothesis, that Appellant knew of the cocaine and gun and intended to control their use or disposition. In doing so the State must present evidence, other than Appellant's mere proximity to the cocaine and the gun, sufficient to sustain its burden of proof. *See Pebworth*, 855 P.2d at 607; *Carolina*, 839 P.2d at 665; *Rudd v. State*, 649 P.2d 791, 794 (Okl.Cr.1982); *Gilreath v. State*, 627 P.2d 443, 445 (Okl.Cr.1981); *Staples v. State*, 528 P.2d 1131, 1133–1135 (Okl.Cr.1974).

■■■ This is a very close case. At trial the State presented the testimony of Treadwell and Roberts to show Appellant's actions and his money tied him to the cocaine and the gun. Appellant denied any knowledge or possession of either the cocaine or the gun. As noted *supra*, the trial court erred in admitting Appellant's withdrawn guilty plea. The jury placed great weight on the plea and very likely found Appellant guilty based on it. When the plea is not considered the remaining evidence is very weak. However, we find the remaining evidence sufficient to support the State's burden of proof. Moreover, the flight evidence provides sufficient additional proof of constructive possession. Therefore, we find the evidence sufficient to support both convictions.

Regarding Appellant's actions prior to the search Treadwell testified after he turned on his emergency signals Galbreath's car took a "little bit more time than was necessary" to pull over. He further stated "[t]he occupants seemed to be moving around the vehicle a little bit, which kind of made [him] curious," and Appellant was moving around when the car was on the shoulder. He said Appellant seemed real confused when first approached but then exited the car and did as he was told. He also said when he approached the car the seats were in the upright position. Appellant testified that on the evening of September 21, 1990, he left his girlfriend's house after an argument and walked to his cousin's house where he met Galbreath and accepted an offer to ride with him in order to calm down. He claimed that after falling asleep on the highway, with his seat reclined, Galbreath woke him up prior to pulling onto the shoulder to tell him a trooper was stopping them. He denied making any "furtive" movements while in the car.[15] He denied

---

15. The only mention of "furtive" movements came in the prosecutor's question to Appellant. Treadwell never characterized Appellant's movements as "furtive."

ever touching the glove box or any items behind Galbreath's seat even though he could have reached them. We find this evidence sufficient to exclude the reasonable hypothesis that Appellant was moving around in the car after waking up and raising his seat back rather than trying to move or hide the cocaine, gun and money.

The evidence is likewise sufficient to connect Appellant, through the money, to the cocaine or the gun. Treadwell said Appellant was not under the influence of anything when read his *Miranda* rights. Treadwell also testified Appellant did not own the car. He admitted handling Appellant's money after handling the contraband, could not say Appellant's money was not contaminated by this action and did not fingerprint any of the contraband. Treadwell said when the car was sniff searched by a drug dog, the dog hit on the glove box and the driver's door but did not hit on the passenger's door. The reason Treadwell arrested Appellant was his proximity to the contraband and that he had "no doubt in [his] mind [Appellant] knew [the cocaine] was there and that he was involved in the situation."

Roberts testified his drug dog will hit on five different drugs,[16] and hit on the driver's door, behind the driver's seat and on the glove box. However, his dog ignored the passenger's door. He said the dog separately hit on both the money from the glove box and Appellant's money. He said before the sniff search at least three people handled the contraband and that drug dogs sometimes hit on used currency. He testified Appellant's money must have been tainted with drugs within one or two days, although cocaine scent will remain for three to four days.

While only cocaine was found in the car Roberts said it is impossible to tell which specific drug his dog is reacting to when indicating the presence of drugs. He finally testified currency can be tested to identify the presence of specific drugs but no testing was done.

Appellant testified he had worked with Galbreath and knew he had a conviction for trafficking but denied knowing him well. Appellant denied using drugs that day, claimed to have seen crack before only on television and denied any agreement with Galbreath to sell crack. He claimed the money in his purse came from savings over a few months but most of it was given to him for his birthday by his girlfriend. He denied the money was drug money or that he tainted it with cocaine. However, he admitted he was unemployed for three to four months prior to the arrest. We note that prior to any police officers handling Appellant's money Sergeant Mike Schumberger's drug dog apparently had no reaction when Appellant was placed in the front seat of Schumberger's patrol car.

We find the above evidence excludes the reasonable hypotheses Appellant's money was unconnected to the cocaine, was contaminated by drugs other than cocaine or had been contaminated just prior to the sniff search and thereby find the evidence sufficient to circumstantially tie Appellant to the cocaine or the gun. Contrary to Appellant's claim, the above evidence does more than prove he was in close proximity to the cocaine and the gun. Where the evidence is sufficient to prove more than mere suspicion of guilt this Court has consistently held such evidence sufficient.[17]

16. Marijuana, cocaine, heroin, hashish and methamphetamine.

17. *Compare White,* —— P.2d at ——, 66 OBJ at 1144 (holding sufficient evidence that defendant, the only person in the car, must have moved drugs), *Carolina* 839 P.2d at 665 (holding evidence defendant took possession of drugs and attempted to hide them sufficient), *Bailey v. State,* 751 P.2d 1100, 1101 (Okl.Cr.1988) (holding evidence defendant attempted to dispose of drugs in presence of police sufficient), *Rudd,* 649 P.2d at 794 (holding evidence of defendant's sole ownership and control of car sufficient), *Gilreath,* 627 P.2d at 445 (holding sufficient evi-

dence that defendant was driver and marijuana was found on floor in front of driver's seat) and *Gray v. State,* 561 P.2d 83, 86–87 (Okl.Cr.1977) (holding sufficient evidence that defendant was intoxicated, and an odor of marijuana was on defendant and inside car) *to Magann v. State,* 601 P.2d 123, 124–125 (Okl.Cr.1979) (holding evidence insufficient in absence of evidence of ownership of car, exclusive control or incriminating statements by defendant), *Hishaw v. State,* 568 P.2d 643, 645 (Okl.Cr.1977) (holding insufficient evidence that joint was in plain view at defendant's feet in car) and *Walker v. State,* 512 P.2d 208, 210 (Okl.Cr.1973) (holding presence of

Moreover, while the above evidence is sufficient to support the convictions, the flight evidence supplies an additional independent factor capable of establishing Appellant's knowledge of and intent to use or dispose of the cocaine and gun. While searching the car Treadwell said Appellant was extremely nervous and watched him during the search. Treadwell stated, however, his main concern was Galbreath and that he felt Appellant would have fled earlier if he believed the situation were bad enough. When Galbreath began to run Appellant first attempted to jump off the bridge. When he climbed back onto the shoulder he landed just as Galbreath ran by and followed Galbreath west off the bridge.

Appellant stated he sat in the car until Treadwell told him to get out. When he got out of the car the air was cold and he was nervous. He was confused about his location and was looking around to see where he was. Appellant testified that while he had the opportunity to either drive away or walk away he only ran "to get away from something [he] didn't do" after Treadwell failed to handcuff Galbreath.

■ The determination of credibility of witnesses and the weight to give testimony is within the province of the jury and this Court will not disturb the jury's findings even where the evidence is in sharp conflict. *See Plantz v. State,* 876 P.2d 268, 281 (Okl.Cr. 1994); *Paxton,* 867 P.2d at 1316; *Hill v. State,* 672 P.2d 308, 310 (Okl.Cr.1983), *cert. denied,* 465 U.S. 1106, 104 S.Ct. 1609, 80 L.Ed.2d 138 (1984). We find the evidence of Appellant's flight renders the evidence sufficient to prove Appellant constructively possessed the cocaine. *See Wentworth v. State,* 513 P.2d 886, 887 (Okl.Cr.1973) (holding defendant's flight and discovery of drugs in his car sufficient); *Guthrey v. State,* 507 P.2d 556, 557 (Okl.Cr.1973) (holding defendant's

actions in slamming bathroom door on police and attempting to flush syringe sufficient), *overruled in part on other grounds in Langham v. State,* 787 P.2d 1279 (Okl.Cr.1990).

Having determined Appellant constructively possessed the cocaine we further find the evidence sufficient to support his conviction for possessing the gun while committing a felony. Possession of the cocaine without a tax stamp is a felony. 68 O.S. 1991, § 450.3. Appellant admits there was no tax stamp on the cocaine. In *Pebworth* this Court held that possession of a firearm may be constructive or actual. The Court discussed factors to consider, under the totality of the circumstances, to determine if constructive possession exists.[18] The second, third and fourth factors exist in the present case. The gun was in a sack behind the driver's seat within three feet of both Galbreath and Appellant. Because it was loaded and more ammunition was with the gun it could be used in need of escape or in a dangerous manner.

Appellant's case must be reversed based on the admission of his withdrawn guilty plea. However, because sufficient evidence, absent the plea, exists to support Appellant's convictions we **REVERSE** and **REMAND** the case for a new trial.

JOHNSON, P.J., and LANE, J., concur.

CHAPEL, V.P.J., concurs in result.

LUMPKIN, J., concurs in result in part and dissents in part.

LUMPKIN, Judge, concurring in result in part and dissenting in part.

I concur in the analysis dealing with the application of the drug tax stamp laws. I also agree there is sufficient evidence to convict Appellant of the crimes charged, although I disagree as to the standard of re-

---

bong, pipe and odor of marijuana insufficient absent defendant's testimony admitting ownership)

18. In *Pebworth,* 855 P.2d at 607, this Court stated:

In conducting our review of the totality of the circumstances in each case we will consider, but not be limited to, factors which indicate (1) The weapon was used to actually facilitate the

commission of the offense; (2) The weapon was possessed or strategically located to be quickly or easily located for use during the commission of an offense; (3) The weapon was intended to be used if a contingency arose or to make an escape; or, (4) The weapon was to be used either offensively or defensively in a manner which could constitute a threat of harm.

view this Court uses. I shall address that first.

Appellant took the stand and testified as to his version of events. He said he was asleep when Galbreath's car was pulled over; he had no control over any items in the car (Tr. 170); he had about $319 (Tr. 172), which he got from working two jobs, plus money his girlfriend gave him (Tr. 173). It was not drug money (Tr. 174). He also offered an explanation for jewelry he had on him (Tr. 174), as well as an explanation why he ran from the officer (Tr. 178). All this constitutes giving his version of events leading to the charges against him. That being the case, this is not an instance of a trial containing entirely circumstantial evidence, as the opinion states. By testifying, Appellant presented his version of events and ran the risk he would present incriminating evidence on cross-examination; he also presented evidence which, if believed, would have resolved the issue in his favor. *Mayes v. State*, 887 P.2d 1288, 1301–1303 (Okl.Cr.1994); *Lowrey v. State*, 87 Okl.Cr. 313, 197 P.2d 637, 644–45 (1948). Therefore, other evidence aside, this case presented both direct and circumstantial evidence, and this Court used the incorrect standard of review determining whether sufficient evidence existed.

Concerning the evidence of the guilty plea: I agree evidence of a guilty plea should not have been introduced. However, I cannot agree with the opinion's statement the error as to a plea of guilty was introduced by the prosecution. It was not! It was introduced by Appellant's own counsel.

The prosecutor did introduce State's Exhibit 8, which was merely an affidavit which stated the Appellant "had in my possession cocaine base in excess of 5.0 grams. I had no tax stamp and I had a gun." But there is nothing on that statement indicating it was given in connection with a guilty plea. There was only a reference it was filled out in court (Tr. 183–84). The prosecutor then asked: "And, were you telling the truth on that day when you signed that affidavit in this courtroom in front of this Judge, swearing, or you telling the truth today?" (Tr. 190–91). At Tr. 198, the prosecutor asked if Appellant wrote on there he had a gun, and no tax

stamp. (Tr. 198–99). In short, there is simply no direct reference to a guilty plea.

Such a reference was subsequently made, but it was done by defense counsel. After referring to the "statement," (Tr. 213), defense counsel asked: "Marlon, when you signed your statement there on March the 8th, were you aware of what had already happened with your codefendant?" (Tr. 216). He asked a similar question at Tr. 218. There were several objections, based on the fact the questions dealt with the co-defendant, and not Appellant. Then, defense counsel asked the following:

After you pled guilty on that day, why did you decide to change your mind?

(Tr. 220). That is the first direct reference to a guilty plea in the transcript. The prosecutor objected because the question was the "subject of plea negotiations." (Tr. 220). Then defense counsel asked:

It's already been testified to that you signed up for a term of fifteen years; is that correct? ... When you were over in jail after you had signed that statement on March the 8th, why did you decide to withdraw your plea, ask the Judge to allow you to withdraw the plea and start over? Why?

(Tr. 221). Appellant responded "Because I didn't feel it was right, the amount of time I got for my first offense" (Tr. 221). In fact, the first reference the prosecutor made to a guilty plea was on recross, when he asked Appellant: "And, in response to that, you said, no you were not being forced to plead guilty; isn't that correct?" (Tr. 223).

The record is very clear, the evidence directly related to a guilty plea did not come from the prosecution, but rather the error was invited by defense counsel. It should also be noted during redirect defense counsel sought to introduce the *very same form* filled out by Galbreath (marked Defendant's Exhibit # 3). This further shows it was Appellant, not the prosecution, who sought the introduction of improper evidence.

Based on the actual facts of this case, the Court should reconsider footnote 14 of the opinion which uses four jury questions as examples why there was no harmless error.

Included in this list was a question asking why Appellant waived his preliminary hearing. In light of the record set out above, I question the validity of those examples as support for the proposition that the error was not harmless. This is especially true since that particular bit of information was also brought out first by defense counsel, this time on direct examination (Tr. 181). If that were error, it was not the prosecutor's fault. To the contrary, it was admitted over the prosecutor's objection (Tr. 181).

It is for these reasons I must dissent to the reversal of the convictions.